## KRAUSE v OSCAR DANIELS CO

Ohio Appeals, 2nd Dist, Franklin Co

No 2940. Decided March 20, 1939

James M. Hengst, Columbus, for plaintiff-appellant.

Wilbur E. Benoy, Columbus, Russell G. Saxby, for defendant-appellee.

GUERNSEY, J. (3d Dist.) sitting by designation.

662

By GUERNSEY, J.

This is an appeal on questions of law from a judgment of the Common Pleas Court of Franklin County, Ohio, entered upon the motion of Oscar Daniels Company, defendant-appellee, for a directed verdict in its favor upon the conclusion of the testimony offered on behalf of Walter D. Krause, plaintiff-appellant, upon the first cause of action in the petition.

The first cause of action was for personal judgment and the second cause of action involved the foreclosure of a purported mechanic's lien for the amount alleged to be due in the first cause of action, and based upon the court's ruling as to the first cause of action a judgment of dismissal was entered for defendant upon the second cause of action from which no appeal on questions of law and fact is made.

Plaintiff as a subcontractor brought this action against Oscar Daniels Company as principal contractor to recover for alleged extra work required by said company upon Columbus limestone which plaintiff furnished as materialman for the construction of three stone structures on the Olentangy Boulevard. The defendant was the principal contractor under a contract with the Ohio Director of Highways.

The contract entered into between plaintiff and defendant in relation to the furnishing of such materials for which recovery is claimed, is in the words and figures following, to-wit:

"September 1st, 1936.
"Mr. W. D. Krause,
212 S. Roosevelt Ave.,
Columbus, Ohio
RE: PROJECT NO. 161—OLENTANGY BLVD..
Columbus, Ohio
Dear Sir:
We hereby accept your verbal proposal for furnishing all material and labor for dressing and delivering to the site all the Face Ashlar Stone required for the above named project. This includes all the stone shown on drawings. Nos. 34/66-35/66-36/66-37/66 required for Bridge No. 11; C. & O. Railroad and drawings Nos. 48/66-49/66-50/66 required for Bridge No. 1.03 Pennsylvania Railroad and drawings Nos. 56/66-57/66 Bridge Interchange Pennsylvania Railroad with the exception of stone actually designated on the drawings as trim stone.

"The material, labor and methods shall be in accordance with the State of Ohio, Department of Highways supplemental Specification dated February 13, 1936 Item S-121; S121.01; S121.02 and S121.03.

"In consideration of the above we agree to pay you the sum of seventy-five cents ($).75 per cubic foot of stone facing. Payments to be made twice monthly for stone that is dressed and ready for delivery, based upon estimated cubage, measured as per Supplemental Specifications S121, less 15% retention. Final payments will be made on the cubage accepted and measured by the State of Ohio, Department of Highways 45 days after complete delivery of stone and as accepted by the State of Ohio.

"It is understood that the stone will be delivered when and as required by our local representative.

"It is further understood that the above price includes Workmen's Compensation, Public Liability and Property Damage Insurance.

"Your signature to this proposition shall constitute an acceptance and a contract.
Very truly yours,
OSCAR DANIELS COMPANY,
By A. A. Pedersen
A. A. Pedersen, Engineer.
ACCEPTED
Walter D. Krause, September 3, 1936."

The petition alleged that plaintiff was to receive 75c per cubic foot on stone facing under the terms of said contract, but because of extra work required thereon by defendant, defendant was indebted to plaintiff to the extent of $5835.34 beyond the amount of said contract price which amount included a loss of profit on certain stone which defendant secured elsewhere after plaintiff ceased to furnish stone upon defendant's refusal to pay for said extra work.

It was alleged in the petition that said extra work involved conforming the stone to maximum joint limitations of three-fourths inch instead of an average of three-fourths inch; that the heads of stone be squared to provide uniform projection of joint in the wall; that no projections were allowed on the face of the stone in excess of one inch; that small stone were not permitted to be used in filling spaces; that the length of all stone used was required to be within the limits of one and one-half to three times the height; that all head joints

were required to be squared back for at least six inches; and that all bed joints were required to be of uniform thickness at least six inches back.

It is further alleged that by reason of the foregoing requirements, said stone could not substantially all be hammer dressed but on the contrary it was necessary to mainly use points and pitching tools in dressing said stone.

On the drawings referred to in the contract between plaintiff and defendant, above set forth, there was a notation as follows:

"All facing stone shall be best quality Columbus limestone. All work shall conform with 'Item S-121 S-stone, F-face, 4 Concrete Masonry.' For example of stone work see bridge over the Scioto River at Dublin 12 miles n.w. of Columbus."

The State of Ohio, Department of Highways Supplemental Specification, dated February 13, 1936—S-121; S121.01; S121.02 and S121.03 referred to in the contract between plaintiff and defendant contained detailed specifications of material, labor and methods. There is no provision for "tolerances" or "variations"; and there is no reference of any kind to the bridge over the Scioto River at Dublin.

Plaintiff offered evidence tending to prove that in the construction of said Dublin Bridge referred to in the notation above set forth, certain "tolerances" or "variations" were permitted in the quarrying, dressing and laying of stone therefor, manifest from the structure itself, and that he had been required to furnish the material provided for in his contract with defendant without such "tolerances" or "variations" and that the refusal of the defendant to accept said materials with such "tolerances" or "variations" occasioned the extra work for which compensation is sought.

Evidence was also offered on behalf of plaintiff tending to prove that in quarrying, dressing and laying Columbus limestone in the district in which said limestone is produced there existsed certain usages and customs known as "tolerances" or "variations", comprehending "tolerances" or "variations" of the character existing in the structure of the Dublin bridge, but there is no evidence tending to prove that the defendant had any notice or knowledge of such usages or customs.

Plaintiff contends first, that the notations on the drawings above mentioned were an incorporation into the contract binding upon defendant of said Dublin bridge as an example of the stone work to be furnished by plaintiff comprehending "tolerances" or "variations" manifest in the structure of said bridge; and second that the usages and customs as to such "tolerances" and "variations" were as a matter of law incorporated in the contract binding upon the defendant.

It is contended by the defendant that the Department of Highways Supplemental Specification mentioned in the contract between plaintiff and defendant controls excluding such "tolerances" and "variations" and it is conceded by plaintiff that if such express language controls, he has no right to recover.

From the state of facts shown by the record, two questions arise. First, whether the express provisions of the specifications govern to the exclusion of the notations on the drawings above mentioned? Second, if the express provisions of the specifications govern to the exclusion of said notations, whether such express provisions govern to the exclusion of the usage and custom as to "variations" or "tolerances".

From an inspection of the contract it will be observed that the plans and specifications were incorporated into the contract by specific reference. These references are each specific as to the purpose thereof.

The first provision of the contract is for furnishing all material and labor for dressing and delivering to the site, all the Capital Face Ashler stone required for the project. It is then stated:

"This includes all the stone shown on drawings Nos. * * * (enumerating certain drawings) with the exception of stone actually designated on the drawings as trim stone."

Plaintiff's contract did not cover the so-called "trim stone", and this statement is merely an extension of the first provision of the contract and merely states what is included under the designation "All the face Ashler stone required for the above named project."

The reference to the drawings is therefore limited specifically to quantity to be furnished.

Likewise the reference by which the specifications are incorporated in the contract is specific. It is stated:

"The material, labor and methods shall be in accordance with the State of Ohio, Department of Highways Supplemental Specifications dated February 13, 1936, Item S-121; S121.01; S121.02 and S121.03".

Thus the contract specifically provided that the material, labor and methods should be in accordance with enumerated specifications, whereas the quantity to be paid for was to be determined by the reference to the drawings.

The rule applicable in this situation is stated in 9 American Jurisprudence, page 11, as follows:

"Where the plans and specifications are by express terms made a part of the contract, the terms of the plans and specifications will control with the same force as though incorporated in the very contract itself. Where, however, the plans and specifications are referred to in the contract for a particular specified purpose, such specifications can serve no other purpose than the one specified, and are foreign to the contract for all other purposes."

Applying this rule to the construction of the contract, the reference to the drawings, that is, the plans in the first paragraph of the contract, was limited to the purpose of determining quantity, and such drawing became part of the contract solely for the purpose mentioned and the notation on said drawings relied on by plaintiff not relating to quantity did not become a part of the contract.

The reference to the specifications in the second paragraph of the contract was expressly limited to the purposes of material, labor and methods which for each and all of these purposes had the effect of incorporating such specifications into the contract. Consequently the supplemental specifications referred to and not the notations on the drawings govern the contractual rights of the parties as to the material, labor and methods which constitute the subject matter of the action.

As the specifications incorporated required the material furnished to be of such character as to involve all the work for which compensation is claimed the plaintiff is not entitled to any additional compensation for such work under the terms of the contract.

With reference to the second contention of plaintiff, that custom and usage control instead of the express specifications, the applicable rule is stated in 40 O. Jur., 785, §21, as follows:

"Evidence of a usage or custom is not admissible to contradict or vary the express terms of a contract or to vary the legal import of a contract, and it has been said that such evidence would be incompetent if its purpose was to add to a written contract. * * * It is obvious that a usage or custom can not create a contract, and if the plain provisions of a contract are at variance with a custom, the custom can not be considered. In other words, the custom can not be substituted for the provisions of the contract."

The plain provisions of the contract in the case at bar are wholly at variance with the usage or custom, evidence of which was offered by plaintiff, and in this situation such provisions govern to the exclusion of any such usage or custom.

For the reasons mentioned, the Common Pleas Court properly directed a verdict in favor of defendant and the judgment of the Common Pleas Court will be affirmed at costs of appellant.

HORNBECK, PJ, & BARNES, J, concur.