DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Barbara Musci, appeals from a judgment of the Summit County Court of Common Pleas, Domestic Relations Division, that modified the child support obligation of her ex-husband, John Musci. Mr. Musci also cross-appeals from that judgment. This Court reverses in part and remands the matter to the trial court.
 I. {¶ 2} Mr. and Mrs. Musci were married on October 20, 1984 and three daughters were born during the marriage. On November 7, 2000, Mrs. Musci filed a complaint for divorce and Mr. Musci later filed a counterclaim. On March 3, 2001, the trial court granted the couple a divorce, divided marital property, and ordered Mr. Musci to pay spousal support and child support. The child support obligation was based on Mr. Musci's substantial annual income, which was close to $400,000 at that time.
 {¶ 3} Although the parties filed numerous post-divorce motions, this Court will detail only those relevant to this appeal. On March 16, 2001, Mr. Musci filed a motion to modify his child support obligation and the shared parenting plan. Since that time, and while the original motion was still pending, Mr. Musci filed additional motions requesting modifications. Mr. Musci based his requests for modification on a change in circumstances. Specifically, his employment had been terminated, he had not secured new employment, and he had moved back to this area and was spending more time with his children. Mrs. Musci later filed several motions, asking the trial court to find Mr. Musci in contempt for failing to comply with various requirements of the divorce decree.
 {¶ 4} These and other pending motions were heard on several different dates over a period of many months. The final hearings were held on December 12 and 13, 2002 before a magistrate. The magistrate who conducted that hearing later issued a lengthy decision that coherently summarized the many post-divorce motions that had been filed, explained what matters had already been resolved, and resolved all matters that were still pending at that time. The decision included a modification of child support and enforcement of certain terms of the separation agreement. After finding that Mrs. Musci was voluntarily unemployed and that Mr. Musci was voluntarily underemployed, the magistrate imputed income to each, based on their projected earning potential if employed.
 {¶ 5} Both parties filed objections to the magistrate's decision. The trial court sustained some of the objections, overruled other objections, and entered an independent judgment. Among other things, the trial court's decision changed the magistrate's imputation of each party's income. Rather than imputing income based on the party's employment earning potential, the trial court imputed income based on their substantial assets. See R.C. 3119.01(C)(11)(b); former R.C.3113.215.
 {¶ 6} Both parties filed a notice of appeal from that order. Because the trial court's order had indicated that a qualified domestic relations order ("QDRO") would be forthcoming and no QDRO had been filed, this Court dismissed the appeal for lack of a final, appealable order.
 {¶ 7} The trial court subsequently entered an order that a QDRO was no longer necessary and vacated that part of its prior order. Mrs. Musci appealed and Mr. Musci cross appealed. The parties raise a total of eleven assignments and cross-assignments of error, which will be consolidated and rearranged for ease of review.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED IN FINDING THAT FATHER HAD EARNED INCOME AND THEN IGNORING THIS $129,000 IN EARNED INCOME WHEN DETERMINING HUSBAND'S CHILD SUPPORT OBLIGATION."
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED IN IMPUTING INCOME TO MOTHER WHERE THERE WAS NO FINDING THAT SHE WAS VOLUNTARILY UNEMPLOYED OR UNDEREMPLOYED AND NO EVIDENCE UPON WHICH SUCH A FINDING COULD BE BASED."
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED IN IMPUTING INCOME TO MOTHER WHERE THERE WAS NO FINDING OF A CHANGE IN CIRCUMSTANCES RELATED TO HER AND NO EVIDENCE UPON WHICH SUCH A FINDING COULD BE BASED."
 ASSIGNMENT OF ERROR IV
"THE TRIAL COURT ERRED IN UTILIZING A COMBINED INCOME CAPPED AT [$150,000] TO DETERMINE THE PARTIES' CHILD SUPPORT OBLIGATIONS WHERE THE PARTIES HAD ASSETS IN EXCESS OF $5,000,000 AND FATHER HAD AN EARNING HISTORY IN EXCESS OF $350,000."
 ASSIGNMENT OF ERROR V
"THE TRIAL COURT ERRED IN CONCLUDING THAT IT WOULD BE INEQUITABLE TO CALCULATE CHILD SUPPORT USING A COMBINED INCOME OF [OVER] $150,000 ON THE PURPORTED BASIS THAT IT WOULD REQUIRE `[FATHER] TO PAY FOR LIFESTYLE EXPENDITURES DECIDED UPON UNILATERALLY BY [MOTHER].'"
 CROSS-ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED IN FINDING THAT [MR. MUSCI] HAD IMPUTED INTEREST INCOME IN THE AMOUNT OF $268,750."
 {¶ 8} Both Mrs. Musci and Mr. Musci challenge the manner in which the trial court calculated their income for purposes of computing the child support obligation.
 {¶ 9} The trial court's determination of a motion to modify child support is governed by the law that existed at the time the motion was filed. See Williams v. Williams (1992),80 Ohio App.3d 477, 482. Mr. Musci filed his motions both before and after the March 22, 2001 amendments to the relevant provisions of the Ohio Revised Code.
 {¶ 10} At the time of Mr. Musci's first motion, R.C.3113.215, a lengthy, comprehensive statute, governed the trial court's determination of child support obligations. R.C.3113.215(A)(1) defined income, in almost verbatim language to the current R.C. 3119.01(C)(5), as:
"(a) For a parent who is employed to full capacity, the gross income of the parent;
"(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent, and any potential income of the parent."
 {¶ 11} This Court has repeatedly held that, for purposes of calculating child support, the trial court cannot impute income to either party without first making a finding that the party is voluntarily unemployed or underemployed. See e.g., Ramskogler v.Falkner, 9th Dist No. 22886, 2006-Ohio-1556, at ¶ 13 (construing the current language in R.C. 3119.01(C)); Marek v. Marek,158 Ohio App.3d 750, 753, 2004-Ohio-5556, at ¶ 14 (construing former R.C. 3113.215(A)(5)).
 {¶ 12} After the court finds that a party is voluntarily unemployed or underemployed, it should impute "potential income" to that party. R.C. 3113.215(A)(5) defined "potential income" to include both:
"(a) Imputed income that the court or agency determines the parent would have earned if fully employed * * *; [and]
"(b) Imputed income from any nonincome-producing assets of a parent, as determined from the local passbook savings rate or another appropriate rate * * *, if the income is significant."
This language is substantially similar to the current R.C.3119.01(C)(11).
 {¶ 13} Following the hearing on this issue, the magistrate found that Mrs. Musci was voluntarily unemployed and that Mr. Musci was underemployed. The magistrate imputed income to each, based solely on their employment earning potential, as supported by evidence that was presented at trial. The magistrate found that Mrs. Musci had the potential to be earning $45,000 annually and that Mr. Musci had actual income of $10,197.00 and had the potential to be earning an additional $64,830.00 annually. The court used those annual income figures to calculate child support.
 {¶ 14} Both parties filed objections to the magistrate's decision. Among other things, they challenged the magistrate's imputation of employment earnings to each and Mrs. Musci asserted that the magistrate had underestimated Mr. Musci's employment earning potential and had failed to consider his substantial assets in the imputation of income.
 {¶ 15} Upon consideration of the parties' objections, the trial court did not explicitly address the magistrate's imputation of employment earnings to each party, but instead imputed interest income to each party of $268,750, based on the income that could be generated by their five million dollars in assets. The trial court then reduced the figure to $75,000 as the imputed income of each party.
 {¶ 16} The parties challenge the manner in which the trial court imputed an equal $75,000 income level to each of them. Among other challenges, they contend that the trial court's calculation of $268,750 in potential interest income had no bearing to their individual financial circumstances and that the $75,000 annual income figure imputed to each is arbitrary and fails to consider the disparate employment earning abilities of the parties. We agree with the parties that the manner in which the trial court imputed income was arbitrary and improper.
 {¶ 17} Although the trial court implicitly adopted the magistrate's finding that Mrs. Musci was voluntarily unemployed and Mr. Musci was underemployed, the trial court should have reiterated that finding in its judgment, for such a finding is necessary to justify an imputation of income.
 {¶ 18} Moreover, after making a finding that the parties were voluntarily unemployed or underemployed, the trial court had authority to impute income, but it was required to comply with the requirements of former R.C. 3113.215(A). See, also, the current R.C. 3119.01(C).
 {¶ 19} The trial court imputed income to the parties by merely assigning an interest rate to all of the assets that each party should have received at the time of the divorce. That calculation was in error for several reasons. First of all, as quoted above, R.C. 3113.215(A)(1) and (5) required the trial court to calculate each party's income using all of the following figures: their actual income, their potential income from employment earnings, and potential income from substantial nonincome-producing assets. The trial court failed to include in its calculation either the actual income of the parties or their potential employment earnings. Regardless of which expert the trial court chose to believe, the evidence before the trial court was clear that Mr. Musci had greater employment earning potential than Mrs. Musci. By failing to include potential employment earnings in its calculation, the trial court erroneously equated Mrs. Musci's earning potential with that of Mr. Musci.
 {¶ 20} Moreover, although the trial court was authorized to impute income by applying an interest rate to the parties' nonincome-producing assets, the trial court applied an interest rate to all assets. The trial court failed to limit its imputation of income to the nonincome-producing assets. The trial court also failed to itemize the current value of the assets that were actually in the possession of each party. Although it is true that the motion to modify was filed not long after the divorce, the evidence was clear that some significant assets had not been transferred between the parties as agreed, that several assets had declined in value due to market forces, and that Mrs. Musci had depleted many of her assets by supporting her children. It was necessary for the trial court to itemize each party's assets to support such an imputation of income. "The purpose of a modification of child support is to reflect the current income and needs of the parties." Zahn v. Zahn, 9th Dist. No. 21541,2003-Ohio-6124, at ¶ 13.
 {¶ 21} Because the trial court computed the parties' annual income in an arbitrary manner, its child support award constituted an abuse of discretion and this matter must be reversed and remanded for a new calculation of child support.
 {¶ 22} Although Mrs. Musci contends that the trial court erred in reevaluating her earning potential in its consideration of Mr. Musci's motion to modify child support, the trial court was required by statute to compute the earning ability of each parent at the time the motion was filed. To determine whether there had been a change in circumstances, a finding necessary to justify a modification of child support, the trial court was required to recalculate the earning ability of each parent to determine whether there had been at least a ten percent change in total child support amount. See R.C. 3119.79; former R.C.3113.215(B)(4); McCoy v. McCoy (1995), 105 Ohio App.3d 651,654-655 (holding that the court must reevaluate each parent's income upon a motion to modify child support).
 {¶ 23} The first through fifth assignments of error and the first cross-assignment of error are sustained insofar as they challenge the trial court's calculation of each party's income for purposes of computing the child support obligation.
 ASSIGNMENT OF ERROR VI
"THE TRIAL COURT ERRED IN ALLOCATING THE CHILDREN'S UNCOVERED MEDICAL EXPENSES EQUALLY BETWEEN THE PARTIES."
 ASSIGNMENT OF ERROR VII
"THE TRIAL COURT ERRED IN ALLOCATING CHRISTINA'S ORTHODONTIA EXPENSES EQUALLY BETWEEN THE PARTIES."
 CROSS-ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED IN FAILING TO INCLUDE APPELLEE/CROSS-APPELLANT'S HEALTH CARE COSTS FOR THE CHILDREN IN THE CHILD SUPPORT CALCULATIONS ON THE WORKSHEET."
 {¶ 24} The parties also raise issues pertaining to the trial court's allocation of uninsured medical and orthodontia expenses and whether the cost of health insurance should be deducted from Mr. Musci's income on the child support worksheet. As explained below, because the allocation of these expenses was intertwined with the trial court's erroneous imputation of income to the parties, these issues must also be addressed on remand.
 {¶ 25} Mrs. Musci contends that the trial court erred in dividing the children's uninsured medical expenses and child's orthodontia expenses equally between the parties. Although these issues are separate from the trial court's calculation of the parties' incomes, the court's determination that the parties should bear these expenses equally directly stemmed from the court's calculation of the parties' income, which this Court has found to be in error. Because the trial court must re-determine the parties' income figures on remand, it must necessarily re-determine how these medical and orthodontia expenses should be allocated between the parties.
 {¶ 26} Mr. Musci also contends that the trial court erred in failing to include on the child support worksheet the expenses he incurred for the children's health insurance premiums. Because the trial court must recalculate income on remand, it will again have before it the issue of crediting Mr. Musci for the amount that he pays in health care premiums, to the extent those figures represent health care coverage that he is required to provide for his children. See Howell v. Pennybaker, 6th Dist. No. H-01-049, 2002-Ohio-2362, at ¶ 10. Any portion of the premium that represents payment for the parent's own coverage or coverage of anyone other than the children subject to the support order, however, would not qualify for deduction. Id.
 {¶ 27} Consequently, the specific challenges raised by Mrs. Musci through her sixth and seventh assignments of error and by Mr. Musci though his second cross-assignment of error have been rendered moot and will not be addressed.
 ASSIGNMENT OF ERROR VIII
"THE TRIAL COURT ERRED IN CONCLUDING THAT MR. MUSCI COULD NOT BE FOUND IN CONTEMPT OF COURT ON THE PURPORTED BASIS THAT MRS. MUSCI HAD NOT FULLY COMPLIED WITH THE TERMS OF THE SEPARATION AGREEMENT."
 {¶ 28} Mrs. Musci argues that the trial court erred in refusing to hold Mr. Musci in contempt for failing to pay child support for August and October of 2001 because the evidence was undisputed that Mr. Musci had failed to make those two payments of child support and there was no evidence that he lacked the ability to pay. The magistrate and the trial judge had further found, however, that each party had failed to comply with certain terms of the separation agreement. The court determined that it would not hold either party in contempt.[1]
 {¶ 29} Initially, we must address whether Mrs. Musci has standing to appeal from the trial court's order that denied her motion to hold her ex-husband in contempt. The Ohio Supreme Court has held that "[t]here is no right of appeal from the dismissal of a contempt motion when the party making the motion is not prejudiced by the dismissal." Denovchek v. Bd. of Trumbull Cty.Commrs. (1988), 36 Ohio St.3d 14, syllabus. "Absent a showing of prejudice to the party making the contempt motion, contempt is essentially a matter between the court and the person who disobeys a court order[.]" Id. at 17.
 {¶ 30} Mr. Musci asserts that Mrs. Musci has no standing to challenge the trial court's denial of her contempt motion because she later received both child support payments and, consequently, suffered no prejudice by the trial court's failure to hold Mr. Musci in contempt. Mrs. Musci insists that she was prejudiced by the trial court's denial of her motion because, had the trial court found Mr. Musci in contempt, it would have awarded her costs and attorney fees.
 {¶ 31} In Schiesswohl v. Schiesswohl, 9th Dist. No. 21629,2004-Ohio-1615, at ¶ 14, this Court held that the appellant, who had unsuccessfully moved the trial court to hold a former spouse in contempt for failing to comply with the separation agreement, had failed to demonstrate prejudice by the mere fact that there was a possibility that he would have received costs and attorney fees if the trial court had granted the contempt motion. That situation did not involve a failure to pay child support and the trial court had discretion to determine whether it would award attorney fees and costs to the moving party after finding the other party in contempt. Id.
 {¶ 32} Because Mrs. Musci sought a finding of contempt based on Mr. Musci's failure to pay child support, however, the trial court's decision to award costs and attorney fees was not discretionary. Pursuant to R.C. 3113.04(B), if the trial court had found Mr. Musci in contempt for failing to pay child support, it was required to make such a finding and "assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party * * * that arose in relation to the act of contempt." Id. Consequently, because Mrs. Musci would have received reimbursement of her costs and attorney fees in pursuing the contempt action, she could demonstrate prejudice by the trial court's failure to find Mr. Musci in contempt for failing to pay child support.
 {¶ 33} Turning to the merits of Mrs. Musci's challenge, we must emphasize that an appellate court will not reverse a trial court's decision in a contempt proceeding absent a showing of an abuse of discretion. State ex rel. Ventrone v. Birkel (1981),65 Ohio St.2d 10, 11. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 34} Mrs. Musci has failed to demonstrate that the trial court acted arbitrarily or unreasonably in failing to find Mr. Musci in contempt. Her only argument is that there was a finding that two child support payments had not been timely paid. Mrs. Musci cites no legal authority, however, for her implicit argument that Mr. Musci's failure to comply with the prior order necessitated a finding of contempt.
 {¶ 35} Although the trial court recognized that Mr. Musci had failed to comply with the child support order for two months, it explained that it was not holding either party in contempt because they had each failed to comply with certain terms of the separation agreement. Mrs. Musci has failed to cite any legal authority to support her position or otherwise demonstrate that the trial court abused its discretion by applying principles of equity in this situation. In fact, there is legal authority to support the trial court's action. See Parker v. Elsass, 10th Dist. Nos. 01AP-1306, 02AP-15, and 02AP-144, 2002-Ohio-3340, at ¶ 39 (trial court did not abuse its discretion by dismissing a contempt motion on equitable principles because both parties had failed to comply with their prior agreement). The eighth assignment of error is overruled.
 CROSS-ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED IN ITS CONSTRUCTION OF THE TERMS OF THE SETTLEMENT AGREEMENT OF THE PARTIES."
 {¶ 36} Finally, Mr. Musci contends that the trial court erred in construing the parties' settlement agreement in two respects: (1) by determining that Mr. Musci should transfer 50 percent of his Qwest retirement account to Mrs. Musci, and (2) by determining that Mr. Musci should transfer a fixed sum of $40,180 to Mrs. Musci, as her share of Mr. Musci's Fidelity IRA, rather than a 25 percent interest in the account at the time he later transferred it into another account.
 {¶ 37} The first issue is now moot. Mr. Musci overlooks the fact that the trial court "cancelled" part of its prior order after this Court dismissed the prior appeal because the QDRO was still forthcoming. The trial court vacated the portion of its order that required Mr. Musci to transfer 50 percent of the Qwest retirement account by QDRO, and that order was not replaced with any other order pertaining to an interest in the Qwest retirement account. Although a footnote in Mrs. Musci's answer brief indicates that the parties reached a settlement on this issue, that settlement is not reflected in the trial court's order vacating the QDRO requirement, nor does it appear as an order of the court elsewhere in the record. Consequently, as there is no pending order pertaining to the division of the Qwest retirement account, there is no longer a live controversy for this court to address.
 {¶ 38} Next, Mr. Musci challenges the trial court's enforcement of the division of his Fidelity IRA. The trial court ordered him to transfer $40,180 to Mrs. Musci, which represented 25 percent of the balance of his Fidelity IRA at the time of divorce. The parties had agreed that Mr. Musci would transfer 25 percent of that account to Mrs. Musci. Although the parties dispute the reasons that this asset never transferred, they do not dispute that Mrs. Musci never received any portion of the Fidelity account. Their dispute centered on when Mrs. Musci's share should be calculated, because this account declined in value over time.
 {¶ 39} At the time of the divorce, the Fidelity account was valued at over $160,000 and 25 percent of the account balance was $40,180. By the time Mr. Musci later transferred the entire balance into another account, it had declined to approximately 50 percent of its value at the time of the divorce. Because the value of this asset had declined significantly, the parties sharply disputed when it should be valued for purposes of calculating Mrs. Musci's 25 percent share: at the time of divorce or at the time the balance was eventually transferred into another account.
 {¶ 40} The trial court determined that the asset should be valued at the time of the divorce, and ordered as follows:
"Husband shall transfer to Wife the sum of $40,180 representing her interest in his Fidelity IRA. This sum shall bear interest at 10% per year beginning thirty (30) days after the date of Order."
 {¶ 41} Mr. Musci contends that the trial court erred in concluding that the parties agreed to divide this account based on its value at the time of the divorce. He maintains that they agreed that the division would be calculated based on the account value at the time he actually transferred the money, not at the time they agreed to the division. The parties base their arguments on differing interpretations of the separation agreement.
 {¶ 42} Separation agreements are contracts, subject to the same rules of construction as other contracts, to be interpreted so as to carry out the intent of the parties. Brown v. Brown
(1993), 90 Ohio App.3d 781, 784. Where there is confusion over the interpretation of a particular clause in a separation agreement, the trial court has the power to hear the matter, clarify the confusion, and resolve the dispute. In reDissolution of Marriage of Seders (1987), 42 Ohio App.3d 155,157. The trial court has broad discretion in clarifying ambiguous language by considering not only the intent of the parties but the equities involved. Id. at 156. Absent a showing of an abuse of discretion, an interpretive decision by the trial court cannot be disturbed upon appeal. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 43} The separation agreement provided for a division of the Fidelity account in the following provision of the parties' separation agreement:
 "8. RETIREMENT ACCOUNTS/PROFIT SHARING ACCOUNTS
* * *
"C. Husband's Premarital Fidelity Account. Husband is the owner of a certain Fidelity Premarital Individual Retirement Account having an approximate balance as more fully set forth on Schedule I. Immediately upon the execution of this agreement, husband shall assign by appropriate order twenty-five percent (25%) of the account balance into an individual retirement account established in the name of wife. The transfer shall be an institution to institution transfer * * *."
 {¶ 44} Schedule I itemized the value of several of the couple's assets, including the Fidelity IRA, as follows:
 Approx.Value
 Item at Date of Trial Husband Wife
 (Subject to (Subject to
 adjustment at adjustment at
 date of transfer) date of transfer)
 * * * * * * * * * * * *
 Husband's $160,270 75%($120,540) 25%($40,180)
 Premarital (75 percent as of (25 percent as of
 Fidelity IRA date of transfer) date of transfer)
 * * * * * * * * * * * *
 {¶ 45} The trial court interpreted Section 8(C) to provide for an immediate transfer, at the time of the agreement, of 25 percent of the account, which at that time was valued at $40,180. Because Mr. Musci had not transferred those funds to Mrs. Musci, the trial court ordered him to do so. The trial court's interpretation appears to be an entirely reasonable interpretation of Section 8(C) of the separation agreement.
 {¶ 46} Mr. Musci contends, however, that the separation agreement provided that Mrs. Musci would receive 25 percent of the value of the Fidelity IRA at the time he actually transferred it. He points to the following language in Schedule I: (1) "25 percent as of date of transfer," below the $40,180 value listed as Mrs. Musci's share of Fidelity account and (2) the heading over the list of assets, which notes that values are subject to adjustment at the date of transfer.
 {¶ 47} The fundamental flaw in Mr. Musci's position is that he relies solely on language from Schedule I, a document that was incorporated by reference into the separation agreement. "Where one instrument incorporates another by reference, both must be read together." Christe v. GMS Mgt. Co. (1997),124 Ohio App.3d 84, 88. If a document is incorporated into a contract for a specified purpose, it can serve no other purpose than the one specified by the terms of the contract. Krause v. Oscar DanielsCo. (1939), 61 Ohio App. 337, 342.
 {¶ 48} By the explicit language of Section 8(C), the sole purpose of the reference to the Fidelity account in Schedule I was to "more fully set forth" its "approximate account balance," not to supplement the parties' agreement with additional terms pertaining to its division. Therefore, the "at the time of transfer" language set forth in Schedule I did not serve to qualify any of the operative language set forth in Section 8(C). Section 8(C) of the separation agreement provides for transfer to Mrs. Musci of 25 percent of the account balance "immediately" through an institution to institution transfer and indicates that the approximate value is set forth in Schedule I. Schedule I referenced $40,180 as the value of 25 percent of the account "at the time of transfer" because the transfer was to take place immediately.
 {¶ 49} Moreover, as Mrs. Musci asserts in her brief, if the parties had intended to divide this asset at the time of transfer, they would have said so explicitly. Other provisions of the separation agreement do include such explicit language. For example, most provisions in Section 9, which divides the parties' brokerage accounts, explicitly provide for the transfer of a specific percentage of each account valued "as of the date of transfer" and do not require that the transfer be immediate.
 {¶ 50} Section 8(C), on the other hand, was the only provision that provided that Mrs. Musci's share of the asset would be transferred "immediately" and that the transfer would be accomplished through an institution to institution transfer. The language of Section 8(C) is distinctly different from other provisions of the separation agreement, and the trial court reasonably concluded that the parties intended to treat this asset differently. Therefore, the trial court did not err in concluding that Mrs. Musci was entitled to $40,180, the value of 25 percent of the Fidelity account at the time of the parties' separation agreement. The third cross-assignment of error is overruled.
 III. {¶ 51} The first, second, third, fourth, and fifth assignments of error and first cross-assignment of error are sustained insofar as they challenge the trial court's calculation of each party's income for purposes of computing child support. The sixth and seventh assignments of error and second cross-assignment of error are not addressed because the issues will necessarily be re-determined on remand. The eighth assignment of error and third cross-assignment of error are overruled. The judgment of the trial court is affirmed in part and reversed in part and remanded for a re-determination of child support and the appropriate allocation of the parties' responsibility for the uninsured medical and orthodontist expenses of their children.
Judgment affirmed in part and reversed in part and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed equally to the parties.
Whitmore, P.J. Carr, J. Concur.
[1] Mr. Musci had also moved the trial court to find Mrs. Musci in contempt, but he does not challenge the trial court's ruling on appeal.