[Cite as *Erwin v. Erwin*, 2014-Ohio-874.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

LISA M. ERWIN

    Appellee

v.

VINCENT LEE ERWIN

    Appellant

C.A. No.      13CA0009

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    10-DI-0219

DECISION AND JOURNAL ENTRY

Dated: March 10, 2014

MOORE, Presiding Judge.

{¶1}    Vincent L. Erwin ("Husband") appeals from the judgment of the Wayne County Court of Common Pleas. This Court affirms.

I.

{¶2}    On July 26, 2010, the trial court issued a decree dissolving the marriage between Husband and Lisa M. Erwin ("Wife"). The decree of dissolution incorporated the parties' separation agreement. In the separation agreement, the parties agreed that Husband would retain the marital residence on the condition that he would refinance or remove Wife's name from any mortgages associated with the residence within ninety days and that, until such time as he obtained a release of Wife's liability on such mortgages, he would hold Wife "harmless on the obligations of the mortgage(s)[.]" The parties agreed that if Husband failed to obtain a release of Wife from all further liability within ninety days, then the marital residence would "be

immediately offered for sale through public auction," and the terms of the auction would "be agreed upon and determined through an auction contract executed by both parties."

{¶3} Further, in the separation agreement, the parties agreed to the division of their retirement benefits as follows:

> The parties acknowledge that both parties have accumulated retirement funds in both public and private accounts in their sole names through their respective employment positions and have agreed upon the division of these accounts as follows:
>
> A. A Qualified Domestic Relations Order (QDRO) shall issue equally dividing the vested value of Wife's retirement account accumulate[d] through Wooster Eye Center, as of the date of the court order which terminates her marital relationship or the nearest date of value established by the plan administrator, minus the amount of any unpaid loan proceeds on the account. Wife shall assume full responsibility of the repayment of the loan thereupon in the approximate amount of $5,300[ ]without further liability upon by Husband;
>
> B. A Qualified Domestic Relations Order (QDRO) shall issue equally dividing the value of Husband's retirement account accumulated through Morton Salt, as of the date of the court order which terminates his marital relationship or the nearest date of value established by the plan administrator. Husband shall assume full responsibility for repayment of any and all loans thereupon without further liability by Wife[.]
>
> * * *
>
> D. The parties acknowledge this to be a fair and equitable division of their retirement accounts.

After the decree was issued, the parties prepared two QDROs, one dividing Wife's plan known as "Wooster Ophthalmologists, Inc. Retirement Savings Plan" and one dividing Husband's plan known as "K+S/Morton Salt 401(k) Savings Plan."

{¶4} In 2012, Wife filed a motion in the trial court asking that Husband be found in contempt for his failure to make timely mortgage payments on the mortgages securing the marital residence, his failure to secure a release of Wife from liability on the mortgages, his failure to pay her one half of the equity in the marital residence, and his failure to divide a

pension account. Wife further asked the court to order an auction of the marital residence in accordance with the terms of the separation agreement.

{¶5} The trial court held a hearing before a magistrate on Wife's motion, and the magistrate issued a decision on August 30, 2012. On the same date that the magistrate issued his decision, the trial court issued an order adopting the magistrate's decision and independently entering judgment. The trial court found Husband in contempt for failing to comply with the decree in regard to holding Wife harmless on the mortgages, and ordered that the property be listed and processed for auction. The court ordered Husband to pay a fine of $500, which the court suspended on the condition that he comply with the orders of the court in regard to the marital residence. The court further ordered the parties to prepare a QDRO dividing Husband's marital portion of his pension plan. The court then ordered that Husband be responsible for $1,500 of Wife's attorney fees.

{¶6} Thereafter, Husband filed objections to the magistrate's decision. On February 8, 2013, the trial court issued an order stating, "Each of [Husband]'s objections have been considered and are overruled. The [m]agistrate's [d]ecision is correct as a matter of law and supported by the evidence. The [m]agistrate's [d]ecision is adopted by the court in its entirety." On February 22, 2013, Husband filed a motion in the trial court requesting that it issue a final, appealable order. On the same date, Husband filed a notice of appeal from the February 8, 2013 order. On March 8, 2013, the trial court issued another order pursuant to Husband's motion for a final appealable order. Husband now presents three assignments of error for our review. We have consolidated our discussion of Husband's second and third assignments of error to facilitate our review.

II.

**{¶7}** Initially, we note that Appellee has argued that the February 8, 2013 order is not a final, appealable order. Section 3(B)(2), Article IV of the Ohio Constitution limits this Court's appellate jurisdiction to the review of final, appealable orders. In the absence of a final, appealable order, this Court must dismiss the appeal for lack of subject matter jurisdiction. *Lava Landscaping, Inc. v. Rayco Mfg., Inc.*, 9th Dist. Medina No. 2930-M, 2000 WL 109108, *1 (Jan. 26, 2000).

**{¶8}** A trial court may not effectuate a final appealable order simply by adopting a magistrate's decision. *Harkai v. Scherba Industries, Inc.*, 136 Ohio App.3d 211, 218 (9th Dist.2000) ("The judge is not permitted to conclude the case by simply referring to the magistrate's decision, even though it may appear more expedient to do so."). Instead, "matters initially heard by a magistrate are not final until a judge 'separately enter[s] his or her own judgment setting forth the outcome of the dispute and the remedy provided.'" *Thompson v. Thompson*, 9th Dist. Medina No. 07CA0023-M, 2009-Ohio-179, ¶ 9, quoting *Harkai* at 218.

**{¶9}** Here, the trial court independently entered judgment through its August 30, 2012 order, which was stayed upon Husband's filing of his objections pursuant to Civ.R. 53(D)(3)(i). We are aware of no requirement for the court to enter independent judgment again in its February 8, 2013 order, in which it overruled the objections to the magistrate's decision. *See Miller v. Miller*, 9th Dist. Medina No. 10CA0034-M, 2011-Ohio-4299. Accordingly, the March 8, 2013 order was superfluous, and was entered without the trial court having jurisdiction to do so, as the notice of appeal from the February 8, 2013 order had already been filed. *See State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga Cty. Court of Common Pleas*, 129 Ohio St.3d 30, 2011-Ohio-626, ¶ 16 ("the filing of the notice of appeal divests the trial court of

jurisdiction to proceed with the adjudication during the pendency of the appeal"). As the February 8, 2013 order was a final appealable order, we conclude that we have jurisdiction relative to this appeal.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT'S DECISION TO DIVIDE [HUSBAND]'S SECOND PENSION IS AN ABUSE OF DISCRETION, IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW.

{¶10} In his first assignment of error, Husband maintains that the trial court erred in adopting the magistrate's decision, which he claims modified the terms of the parties' separation agreement in regard to the division of their retirement accounts. We disagree.

{¶11} "[T]he decision to adopt, reject, or modify a magistrate's decision lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion." *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 5. However, "we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18.

{¶12} "A trial court is without authority to modify a property division in a separation agreement which has been incorporated into a dissolution of marriage decree." *Bond v. Bond*, 69 Ohio App.3d 225, 227 (9th Dist.1990). "Where there is confusion over the interpretation of a particular clause in a separation agreement, the trial court has the power to hear the matter, clarify the confusion, and resolve the dispute." *Musci v. Musci*, 9th Dist. Summit No. 23088, 2006-Ohio-5882, ¶ 42, citing *In re Dissolution of Marriage of Seders*, 42 Ohio App.3d 155, 157 (9th Dist.1987).

{¶13} In a footnote in Husband's brief, he indicates that "[t]here is no clear indication in the trial court's decision as to what its rational[e] was for ordering the division of the defined

benefit pension. The court merely ordered that it be done, but did not explain whether this was a modification, an interpretation or some other legal device." In the magistrate's decision, the magistrate noted that Husband had accumulated both a 401k and a pension through his employment at Morton Salt. However, the provision pertaining to Husband's retirement account did not specify which of these retirement accounts was subject to division. Husband maintained that the provision covered only the 401k, and that, to modify this provision, Wife would have been required to file a motion pursuant Civ.R. 60(B). The magistrate responded to this argument by stating that the court had "discretion to review the agreement and based upon the evidence and testimony, reach a decision on what the parties' intent was at the time of the agreement." The magistrate determined that the parties intended to equally divide the marital portions of their retirement benefits. Based upon the analysis utilized by the magistrate and adopted by the trial court, we conclude that the court divided the pension based upon its power to resolve an ambiguity contained in a separation agreement. Therefore, we will first address whether the provision at issue was ambiguous.

Ambiguity

{¶14} "Separation agreements are contracts, subject to the same rules of construction as other contracts, to be interpreted so as to carry out the intent of the parties." *Musci* at ¶ 42, citing *Brown v. Brown*, 90 Ohio App.3d 781, 784 (11th Dist.1993). "The intent of the parties is presumed to reside in the language they chose to use in their agreement." *Hare v. Isley*, 9th Dist. Summit No. 26078, 2012-Ohio-3668, ¶ 9, quoting *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313 (1996). Accordingly, when that language contained within the contract is unambiguous, "a court may look no further than the writing itself to find the intent of the parties." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, ¶

37. Ambiguity refers to "the condition of admitting of two or more meanings, of being understood in more than one way, or of referring to two or more things at the same time[.]" *Robinson v. Beck*, 9th Dist. Summit No. 21094, 2003-Ohio-1286, ¶ 25, quoting *Boulger v. Evans*, 54 Ohio St.2d 371, 378 (1978). The determination of whether a contract is ambiguous is a question of law that this Court reviews de novo. *Salter v. Salter*, 9th Dist. Summit No. 26440, 2013-Ohio-559, ¶ 6, quoting *Hahn v. Hahn*, 9th Dist. Medina No. 11CA0064-M, 2012-Ohio-2001, ¶ 9.

{¶15} Here, Husband maintains that the separation agreement unambiguously provided for the division of his 401K account and not his pension plan. In support, Husband notes that the phrase "retirement account" is singular, and the provision refers to loans that may exist on the account. Husband maintains that no loans could have existed against his pension account. Therefore, Husband argues that the singular "retirement account" referenced in the separation agreement unambiguously refers to his 401k account.

{¶16} Based upon our review of the parties' separation agreement, we conclude that the term "retirement account" was ambiguous, as this term could be viewed as contemplating the division of the entirety of the Morton Salt retirement account rather than one specific 401(k) account. Neither the names nor the types of Husband's specific retirement accounts are listed in the provision dividing the retirement accounts. *Compare Semmelhaack v. Semmelhaack*, 9th Dist. Wayne No. 12CA0035, 2013-Ohio-3568, ¶ 3, 14 (separation agreement not ambiguous as to which plans were subject to division where it provided that the parties would equally divide Husband's "interest in a pension provided through his employer, UPS, said Plan being known as the UPS/IBT Full-Time Employee Pension Plan."). We do not agree with Husband that the singular form of the phrase "retirement account" and the reference to potential loans on the

account unambiguously requires division of his 401k account and not his pension plan. Both of these accounts were retirement accounts which Husband accumulated through Morton Salt, and both could be viewed as comprising the entirety of the retirement account through Morton Salt. Accordingly, we conclude that this term of the separation agreement was ambiguous.

Testimony of Intent

{¶17} Husband next argues that the trial court's determination as to the parties' intent relative to the retirement accounts was against the manifest weight of the evidence. In determining whether a trial court's ruling is against the weight of the evidence:

> [t]he [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

(Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶18} At the hearing before the magistrate, Husband affirmed that he has two types of retirement accounts through Morton Salt: a 401k and a pension. Husband maintained that Wife was aware of the existence of both accounts. He further testified that the parties discussed the pension plan during their negotiations prior to entering into the separation agreement, and the parties agreed that Husband would retain the pension plan in exchange for Wife receiving certain benefits relative to their minor son. However, Wife testified that she was not aware of the existence of Husband's pension plan at the time they entered into the separation agreement, and she did not become aware of the pension plan until months after the decree was issued, when a third party informed her of the plan's existence. The magistrate specifically found Wife's

testimony more credible. In making this determination, the magistrate also noted that, had the parties agreed for Husband to retain his pension account, the parties could easily have specified this in the separation agreement. We cannot say that the trial court's decision to credit Wife's version of these events was against the manifest weight of the evidence. *See Eastley* at ¶ 20-21.

Clarifying the Ambiguity

{¶19} After considering the parties' intent along with the provisions of the separation agreement, the court clarified the ambiguity in regard to the retirement accounts by interpreting the separation agreement as dividing all of the marital portions of the parties' retirement accounts by QDRO. Husband argues that the trial court erred in this clarification. "The trial court has broad discretion in clarifying ambiguous language [in a separation agreement] by considering not only the intent of the parties but the equities involved." *Musci*, 2006-Ohio-5882, at ¶ 42, citing *In re Marriage of Seders*, 42 Ohio App.3d at 156. Therefore, "[a]bsent a showing of an abuse of discretion, an interpretive decision by the trial court cannot be disturbed upon appeal." *Musci* at ¶ 42, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). An abuse of discretion connotes that a trial court was unreasonable, arbitrary or unconscionable in its ruling. *Blakemore* at 219.

{¶20} Here, Husband's argument focuses on the trial court's reliance on Wife's testimony that she was unaware of the pension plan. From this, he concludes that neither party intended to divide the pension, and thus the court could not have interpreted the separation agreement as dividing what Wife claims to be an unknown asset. However, we do not read the magistrate's decision as finding that the parties' specifically intended to divide the pension; instead, the magistrate determined that the parties' intended to divide all of the retirement accounts accumulated during marriage. In making this determination, the magistrate referenced

two other terms of the separation agreement and the parties' testimony. First, the separation agreement provides that the parties desired to "fully and completely compromise, settle and adjust between themselves all marital rights and claims respecting the property of each other[.]" Second, the agreement provided that it was a "full and complete settlement of all spousal support and property rights between the parties." The magistrate concluded that these provisions, when read in combination with the retirement provision, and when taking into consideration that testimony and credibility of the parties, served as the basis for clarifying the separation agreement to provide for a global division of the parties' retirement accounts accumulated through their employers. Therefore, it appears that the magistrate read the separation agreement's reference to Husband's "retirement account" as a classification of all property fitting this description as opposed to a reference to a particular account. Although Wife may have been unaware of which specific accounts comprised this class of property, the trial court reasonably could have interpreted the parties' intent as equally dividing the marital portions of all property contained within this classification. Accordingly, we cannot say that the trial court's clarification was an abuse of discretion.

{¶21} Accordingly, Husband's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN ORDERING THAT THE PARTIES' MARITAL RESIDENCE BE SOLD, IN REQUIRING [HUSBAND] TO PAY [WIFE] ONE HALF OF THE EQUITY PRESENT THEREIN, AND IN FAILING TO FIND THAT A NOVATION HAD OCCURRED BETWEEN THE PARTIES. SUCH DETERMINATION IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE, IS CONTRARY TO LAW, AND CONSTITUTES AN ABUSE OF DISCRETION.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN FINDING [HUSBAND] IN CONTEMPT OF COURT AND IMPOSING SANCTIONS AND IN REQUIRING HIM TO PAY

ATTORNEY FEES TO [WIFE]. SUCH DECISION CONSTITUTES AND ABUSE OF DISCRETION, IS CONTRARY TO LAW, AND CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶22} In Husband's second and third assignments of error, he argues that the trial court erred by ignoring a post-decree novation, finding him in contempt of court, and enforcing the original provisions of the separation agreement in regard to the marital residence. Additionally, in his third assignment of error, Husband argues that the trial court erred in ordering that he pay $1500 of Wife's attorney's fees.

{¶23} Although a trial court's action on a magistrate's decision lies within the discretion of the trial court, we consider that action "with reference to the nature of the underlying matter." *Barlow*, 2009-Ohio-3788, at ¶ 5; *Tabatabai*, 2009-Ohio-3139, at ¶ 18.

{¶24} In his second and third assignments of error, Husband premises the majority of his arguments on the existence of a novation relative to the parties' agreement as to the marital residence. He maintains that the existence and terms of this novation were established by the weight of the evidence, and the trial court erred in failing to find that a novation was created. As Husband's arguments pertain to the weight of the evidence, we must "weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Internal quotations and citations omitted.) *Eastley*, 132 Ohio St.3d at ¶ 20.

{¶25} In regard to contracts of novation, in *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, ¶ 18, the Ohio Supreme Court explained that:

> A contract of novation is created where a previous valid obligation is extinguished by a new valid contract, accomplished by substitution of parties or of the undertaking, with the consent of all the parties, and based on valid consideration. A novation can never be presumed but must be evinced by a clear and definite

intent on the part of all the parties to the original contract to completely negate the original contract and enter into the second.

(Internal quotations and citations omitted.) *See also Isley v. Isley*, 9th Dist. Summit No. 26078, 2012-Ohio-3668.

**{¶26}** Here, Husband concedes that "[i]t is clear that the original [s]eparation [a]greement which awarded [Husband] the parties' marital residence also imposed upon him the obligation to remove [Wife]'s name from the indebtedness thereupon, or cause the home to be sold in accordance with the terms of the [s]eparation [a]greement." The separation agreement provided that if Husband did not remove Wife from liability associated with the home, then the home would be sold through auction. However, Husband maintains that the trial court erred ordering the auction of the marital residence and in finding him in contempt because, after the decree was issued, the parties entered into a novation, in which they agreed that Husband would sell the house once the housing market had improved and once he had completed repairs on the house. Husband then maintains that, because the court erred in finding him in contempt, it also erred in imposing sanctions and requiring him to pay Wife's attorney's fees.

**{¶27}** At the hearing before the magistrate, Husband acknowledged that, after the decree was issued, he had made one house payment in August of 2010. However, he then quit making monthly mortgage payments, resulting in the lender filing a complaint in foreclosure on April 13, 2011, and he did not again begin making mortgage payments until July of 2011. After foreclosure proceedings commenced, Wife agreed to sign an application for a loan modification submitted to her by Husband. Foreclosure proceedings were terminated on November 9, 2011. Husband maintains that Wife's approval of the mortgage loan modification evidences the parties' novation.

{¶28} Wife testified that she was served with foreclosure papers in April of 2011, and she was unaware at that point that Husband had not been making payments on the mortgage. Wife acknowledged that she signed the loan modification agreement because Husband had informed her that if she did not sign, he was not going to make the mortgage payments, and she did not want the house to be foreclosed. Wife acknowledged that, in several discussions she had with Husband after the decree was issued, she agreed with Husband that he should improve the house prior to placing it for sale.

{¶29} The magistrate noted that, although the parties may have agreed to delay the sale of the property, it should be sold in a timely fashion. Accordingly, the magistrate rejected Wife's request to have the property listed for sale, and instead recommended that the real estate be auctioned immediately in accordance with the separation agreement. The magistrate also concluded that even if the court were to accept Husband's argument that Wife had agreed that the mortgage payments did not have to be made in a timely fashion, there was no evidence that Wife agreed to a foreclosure, and Husband did not dispute Wife's testimony that, as a result of the foreclosure, Wife's credit had suffered. Further, the magistrate noted that there was no evidence presented on whether, if Husband had attempted to make good faith payment on the mortgage, the foreclosure proceedings could have been prevented. The magistrate recommended that Husband be found in contempt on the violation of the provision to hold Wife harmless. The trial court adopted the magistrate's decision, finding him in contempt, and sanctioning him to a suspended $500 fine.

{¶30} Assuming without deciding that the parties could properly modify a separation agreement incorporated in a dissolution decree through a novation of the nature alleged by Husband, we cannot say that the trial court's failure to determine that there existed a novation

was against the weight of the evidence. Upon weighing the credibility of the testimony of the parties, the trial court determined that Wife did not intend to modify the separation agreement so as to eliminate husband's obligation to ultimately refinance the mortgage, hold her harmless on the obligation, and pay her share of equity in accordance with the separation agreement. Husband does not explain how the trial court lost its way in making its determination. *See Eastley*, 2012-Ohio-2179, at ¶ 20-21 (in making credibility determinations, court of appeals must be mindful of the presumption in favor of the finder of fact). Moreover, in order for a novation to exist there must be consideration. *See Williams,* 2012-Ohio-690, at ¶ 18. Husband maintains that Wife received consideration by the cessation of foreclosure proceedings. However, we fail to see how this benefit could serve as consideration where the separation agreement already obligated Husband to hold Wife harmless on the mortgage and remove her from liability on the home. Although Husband and Wife testified that they had agreed to Husband postponing the sale so that he could make improvements on the home to effectuate a better sale price, from which Wife would benefit, it does not appear from the record that Wife meant for this agreement to negate the terms of the separation agreement as to holding her harmless on the mortgages. Instead, Wife testified that she was not aware that Husband had stopped making mortgage payments prior to receiving the notice of the foreclosure proceedings, and there was no evidence that she consented to foreclosure proceedings. Thus, we conclude from the record that the trial court did not lose its way given the absence of a clear and definite intent on the part of Wife to completely negate the terms of the separation agreement. *See id.* at ¶ 18 ("A novation can never be presumed but must be evinced by a clear and definite intent on the part of all the parties to the original contract to completely negate the original contract and enter into the second."). To the

extent that Husband argues in his second and third assignments of error that the trial court erred in this respect, his assignments of error are overruled.

{¶31} Husband further argues that, even if there existed no valid novation, he in good faith believed that the parties' had reached an understanding that he postpone sale of the home. Therefore, he argues that the trial court should not have found in him in contempt. Husband does not fully develop this argument with citations to authority and references to the record. *See* App.R. 16(A)(7) (Appellant's argument in his brief to include "citations to the authorities, statutes, and parts of the record on which appellant relies."). Nevertheless, we find Husband's argument misplaced. The trial court did not find Husband in contempt for his failure to sell, or to remove Wife from liability on, the house within ninety days. Instead, the trial court found Husband in contempt for failing to abide by the provision that he hold Wife harmless on the mortgages until such time as she was removed from liability. We can locate nothing in the record demonstrating any understanding on the part of Husband that he believed in good faith that Wife agreed for him to cease making home mortgage payments. Accordingly, as Husband has limited his argument regarding the contempt finding to the evidence of novation or his understanding of a post-decree agreement, his second and third assignments of error are overruled to this extent.

{¶32} Husband also argues that the trial court erred in awarding Wife attorney fees. However, Husband's sole argument in support pertains to our decision in *Miller v. Miller*, 9th Dist. Wayne No. 09CA0025, 2010-Ohio-1251. Husband maintains that *Miller* stands for the proposition that a court cannot sanction a party without a finding of contempt. However, *Miller* is inapposite. In *Miller*, the trial court did not make a contempt finding, whereas here, the trial court did find Husband in contempt. *See id.* at ¶ 26-27. As Husband has limited this argument

to his reliance on *Miller*, his third assignment of error is overruled to the extent he argues that the trial court erred in awarding attorney's fees to Wife.

**{¶33}** Accordingly, Husband's second and third assignments of error are overruled.

## III.

**{¶34}** Husband's assignments of error are overruled. The decision of the trial court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

BELFANCE, J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

LON R. VINION, Attorney at Law, for Appellant.

RENEE JACKWOOD, Attorney at Law, for Appellee.