DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Ben Goeller, appeals from the journal entry of the Lorain County Court of Common Pleas, Juvenile Division, which granted legal custody of the subject child to appellee, Richard Lorence. This Court affirms, in part, and reverses, in part.
 I. {¶ 2} Appellant and Rondi Goeller were married when Rondi gave birth to Bryan Goeller on June 14, 1993. Rondi died approximately four months later after suffering a stroke. More than one and a half years after the child's birth, appellee commenced a parentage action alleging that he was the child's biological father. The parties complied with court ordered DNA testing, which showed that appellee was the child's biological father. The juvenile court declared appellee to be the child's biological father on February 27, 1996.
 {¶ 3} Appellant and appellee entered into a shared parenting plan, which was approved by the juvenile court. This Court subsequently found the shared parenting plan to be void ab initio. Lorence v. Goeller (July 19, 2000), 9th Dist. No. 98CA007193. This Court further restored appellant as the child's sole custodial parent. Id. Notwithstanding the juvenile court's assertion that this Court's pronouncement to that effect was merely dicta, this Court was restating a legal truth. By virtue of the fact that the child was born to Rondi and appellant during the course of their marriage, appellant was the child's custodial parent. Obviously, an order of custody does not need to be given to the married parents. Because no child exists in a custodial void, it is axiomatic that appellant was the child's sole custodial parent after his mother's death until such time as a court of competent jurisdiction ordered otherwise.
 {¶ 4} On December 27, 2002, appellee filed a complaint for legal custody of the child pursuant to R.C. 2151.23. In his complaint, appellee alleged that he was the natural father of the child and that "[i]t is in the best interest of the minor child that plaintiff be awarded legal custody of the minor child." Appellant answered, denying that an award of legal custody to appellee would be in the child's best interest. On February 23, 2004, appellant filed an amended answer and counterclaim for legal custody of the child, alleging that legal custody to appellant would be in the child's best interest.
 {¶ 5} The matter proceeded to contested custody hearing on May 24 and 25, 2004. The trial court, in reliance on the test set forth in In rePerales (1977), 52 Ohio St.2d 89, awarded legal custody of the child to appellee upon a finding that appellee was the biological father of the child and that appellee was suitable to parent the child. Appellant timely appeals, setting forth six assignments of error for review.
 II. ASSIGNMENT OF ERROR I
"The trial court erred and abused its discretion in utilizing the improper standard for a child custody proceeding under R.C. 2151.23(A)(2) between a parent and a non-parent as set forth in In re Perales, that an award of custody to the parent would be `devastating' to the child, instead of the proper standard of `detrimental' to the child."
 {¶ 6} Appellant argues that the trial court misapplied the standard inIn re Perales, requiring the trial court to find a natural parent unsuitable before it may award custody of a child to a nonparent. Specifically, appellant argues that the trial court considered whether an award of custody to the natural parent would be devastating to the child, as opposed to detrimental. This Court disagrees.
 {¶ 7} The Ohio Supreme Court held that
"[i]n an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability — that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." In re Perales,
52 Ohio St.2d at syllabus.
 {¶ 8} In this case, the trial court found that appellee had neither abandoned nor contractually relinquished custody of the child, nor had appellee become totally incapable of supporting or caring for the child. The trial court continued:
"Consequently, the Court must award custody of Bryan to Lorence unless it is sufficiently established that the detriment to Bryan caused by such an award would warrant a divestment of Lorence's fundamental parental rights." (Emphasis added.)
 {¶ 9} The trial court then cited several cases addressing the issue of parental suitability, including In re Dunn (1992), 79 Ohio App.3d 268,272, which stated that removing the subject children from their stepmother's (nonparent's) home would have a "devastating" and "detrimental" effect on the children.
 {¶ 10} The trial court continued:
"In the present case, Bryan will arguably suffer some detriment if placed in Lorence's custody in that he will have to change both his primary residence and neighborhood, as well as attend a different school. These are certainly stressful and disruptive events, but the Court cannot conclude from the record that their occurrence will have a `devastating' impact on Bryan, or that they will cause him such detriment as to warrant the divestment of Lorence's parental rights. * * *
"* * * However, the holding in In re Porter (1996), 113 Ohio App.3d 580
makes it clear that just because one environment presents an arguably better situation for a child does not mean the other is necessarilydetrimental." (Emphasis added.)
 {¶ 11} The trial court then concluded that appellee was a suitable parent.
 {¶ 12} Under the circumstances, the trial court clearly considered appellee's suitability as a parent in terms of detriment to the child. This Court cannot say that the trial court modified or otherwise enhanced the standard to require that an award of custody to appellee must be devastating to the child before appellee might be divested of his fundamental right to parent his natural child. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"The decision of the trial court in finding that plaintiff/appellee was a suitable parent and awarding him custody of the minor child, bryan goeller, was an abuse of discretion."
 {¶ 13} Appellant argues that the trial court abused its discretion, when it found appellee to be a suitable parent and awarded legal custody to appellee. This Court disagrees.
 {¶ 14} A trial court retains broad discretion in child custody matters, and this Court will only reverse the trial court upon a showing of an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 15} In addition, this Court's role is to ascertain "whether the award of custody is supported by a substantial amount of credible and competent evidence." Poulton v. Poulton (Feb. 7, 2001), 9th Dist. No. 3056-M. This Court, therefore, accords the trial court's decision "the utmost respect as the trial court is better equipped to weigh the evidence due to the knowledge gained through the observation of witnesses throughout the custody proceedings." Ives v. Ives, 9th Dist. No. 02CA008176, 2003-Ohio-3505, at ¶ 18.
 {¶ 16} The instant custody dispute was brought pursuant to R.C.2151.23(A)(2), which provides that the juvenile court has exclusive original jurisdiction to determine the custody of any child not a ward of another court of this state. This Court has acknowledged that "there is no provision of the Ohio Revised Code that provides a standard for a juvenile court to apply in determining custody disputes that fall within the jurisdiction provided by R.C. 2151.23(A)(2)." Baker v. Baker (1996),113 Ohio App.3d 805, 809. Therefore, this Court looks to Ohio case law for the framework which guides juvenile courts in such disputes.Ives at ¶ 12.
 {¶ 17} This Court has stated:
"Although custody proceedings involving disputes between parents are best served by looking solely at the welfare or best interests of the child, `the court's scope of inquiry must, of necessity, be broader in R.C. 2151.23(A) custody proceedings between a parent and a nonparent, which bring into play the right of the parent to rear his own child.' [Baker, 113 Ohio App.3d] at 810, citing In re Perales (1977),52 Ohio St.2d 89, 96. The fundamental rights of a parent are effectuated by severely limiting the circumstances under which a parent may be denied custody of their [sic] minor children. [In re Hockstock, 98 Ohio St.3d 238,2002-Ohio-7208,] at ¶ 17, citing In re Perales, 52 Ohio St.2d at syllabus. Therefore, in these instances, there must be a finding a parental unsuitability before child custody can be awarded to a nonparent. Hockstock at ¶ 18. See Baker, 113 Ohio App.3d at 811. Suitability or lack thereof, essentially measures the harmful effect of the custody on a child. Baker, 113 Ohio App.3d at 811. As a child's best interest would not be served in the custody of an unsuitable parent, Ohio law has thus `melded the bestinterest-of-the-child test with the suitability-of-the-parent test.'" Id." Ives at ¶ 13.
 {¶ 18} The test that the trial court must apply when determining custody disputes between a parent and a nonparent is set forth in In rePerales, 52 Ohio St.2d at syllabus:
"In an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability — that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child."
 {¶ 19} It is important to note that it is not appellant's suitability as a parent that is the threshold issue in this custody dispute between nonparent appellant and natural parent appellee. The evidence may have established that appellant is more than suitable to parent the child. However, the threshold issue which the trial court must have determined before it could award legal custody to nonparent appellant under law is whether or not natural parent appellee is unsuitable. A review of the record indicates that the trial court did not abuse its discretion when it found by a preponderance of the evidence that appellee is suitable to parent the child.
 {¶ 20} There is no evidence in the record to indicate that appellee abandoned the child, that appellee contractually relinquished custody of the child, or that appellee had become totally incapable of supporting or caring for the child. The undisputed issue before the trial court was whether an award of custody to appellee would be detrimental to the child.
 {¶ 21} There was evidence presented at trial that the child lived with appellant during the first eleven years of the child's life, although appellee began to have visitation with the child when the child was approximately two years old. Over time, appellee enjoyed more expansive visitation with the child, including some overnight visits. When the child was almost four years old, the parties voluntarily entered into a shared parenting plan, which gave appellee possession of the child each week from Thursday after work until Monday morning, when appellee took the child to school. Although this Court ultimately found the shared parenting plan to be void ab initio, appellee continued to have extended visitation with the child after the shared parenting plan was vacated.[1]
 {¶ 22} There was evidence presented at trial that appellee provided adequate care for the child while the child was in his possession. Appellee's home was adequate and the child had his own bedroom there. Appellee disciplined the child by grounding or taking away privileges when necessary. Appellee exposed the child to extended family and facilitated the child's bond with his extended family members.
 {¶ 23} In addition, there was evidence presented at trial that appellee is capable of nurturing and providing adequate care for the child. Appellee earns a steady and sufficient income to provide for the child. Appellee has also made arrangements for adequate child care in appellee's absence.
 {¶ 24} Although an award of custody would necessitate the child's moving to a new neighborhood and school district, the child was already familiar with the neighborhood because of regular visits with appellee. The trial court found that the child had already experienced significant changes, including the need to adjust to appellant's new wife, so that the stresses associated with a move into appellee's home would not be so detrimental as to make appellee an unsuitable parent. This Court cannot find that the trial court abused its discretion in making such a determination.
 {¶ 25} Appellant failed to present sufficient evidence at trial to prove by a preponderance of the evidence that appellee posed a risk of harm to the child or that appellee was otherwise incapable of adequately providing for the needs of the child. This is not the case where an eleven-year old child was wrestled from the only parent he ever knew and thrust into the home of a stranger. The child knew that appellee was his natural father, and he spent significant periods of time in appellee's care and possession over the course of nine years. While this Court takes well the trial court's recognition that appellant's home might present the "better situation" for the child because that would prevent any disruption in the status quo and maintain the child with his "psychological" parent, that does not necessarily mean that an award of custody to appellee would be detrimental to the child. Appellant's suitability as a parent does not equate to appellee's unsuitability. Before the trial court could award custody of the child to a nonparent, the court must necessarily find by a preponderance of the evidence that appellee is unsuitable, not merely that appellant is suitable and possibly a better placement.
 {¶ 26} A review of the evidence presented at trial indicates that the trial court could have reasonably found that appellee was a suitable parent. Under those circumstances, the trial court did not abuse its discretion by awarding custody to appellee, the child's natural parent. Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"The trial court erred and abused its discretion in failing to award defendant/appellant visitation or companionship with the minor child."
 {¶ 27} Appellant, in reliance on R.C. 3109.11, argues that the trial court erred by failing to make any provision for appellant's visitation with the child after awarding legal custody to appellee. This Court disagrees.
 {¶ 28} R.C. 3109.11 states, in relevant part:
"If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in the best of the minor child."
 {¶ 29} There is no dispute that appellant, as a widower, is a relative of the child's deceased mother. Appellant's assignment of error must fail, however, because appellant failed to file a complaint for visitation or companionship of the minor child. Appellant filed a counterclaim for legal custody of the child, but he did not request visitation or companionship with the child either in his counterclaim or in any motion before the court. With no complaint or motion for visitation before the trial court, the court need not have considered whether or not the granting of visitation or companionship rights would be in the child's best interest. Because appellant failed to comply with the procedural requirements to seek visitation or companionship rights with the child, the trial court did not err when it omitted any such visitation or companionship order in its journal entry disposing of the case. Appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV
"The trial court erred and abused its discretion by failing to consider the in camera interview of the minor child when awarding custody of the minor child to plaintiff/appellee and by failing to follow the procedures set forth in R.C. 3109.04(B)(2)(b)."
 {¶ 30} Appellant argues that the trial court erred by failing to consider the in camera interview of the minor child and failing to consider the procedures set forth in R.C. 3109.04(B)(2)(b). This Court disagrees.
 {¶ 31} R.C. 3109.04 addresses the allocation of parental rights and responsibilities for the care of children and shared parenting. R.C.3109.04(A) clarifies that this section of the Revised Code concerns "any divorce, legal separation, or annulment proceeding and * * * any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child[.]" R.C. 3109.04(B)(1) provides for the interviewing in chambers of the involved child regarding the child's wishes and concern specifically with respect to the allocation of parental rights and responsibilities for the care of the child under R.C.3109.04. R.C. 3109.04(B)(2)(b) then sets forth the determinations that the trial court must make, if the court has interviewed the child pursuant to R.C. 3109.04(B)(1).
 {¶ 32} This case does not involve the allocation of parental rights and responsibilities pursuant to R.C. 3109.04, because the child is not the child of a marriage between the parties or the natural child of the parties. For the same reason that this Court found the parties' earlier purported shared parenting plan to be void ab initio, R.C. 3109.04 is not applicable in the determination and management of the instant custody dispute. The trial court had the jurisdiction to determine this matter pursuant to R.C. 2151.23(A)(2) and was not bound by the mandates of R.C.3109.04(B)(2)(b). Because R.C. 3109.04 is inapplicable to the trial court's determination of the instant custody dispute, the trial court did not err by failing to comply with the statutory provisions therein regarding mandatory determinations regarding an in camera interview with the child in this custody dispute governed by R.C. Chapter 2151. Appellant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR V
"The trial court erred and abused its discretion in limiting and excluding the expert testimony of michael leach, ph.d. at trial and by excluding the admission of michael leach, ph.d.'s expert report in evidence."
 {¶ 33} Appellant argues that the trial court improperly excluded both the expert testimony and expert report of Dr. Michael Leach at trial. Specifically, appellant argues that the trial court erred by refusing to allow Dr. Leach to testify as to the ultimate issue in the case and as to information perceived by Dr. Leach during interviews with the child. This Court disagrees.
 {¶ 34} "The decision to admit or to exclude evidence is a matter left within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion." Gamble v. Summit Cty. Dept. of Jobsand Family Servs., 9th Dist. No. 21450, 2004-Ohio-193, at ¶ 12. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.Blakemore, 5 Ohio St.3d at 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons, 66 Ohio St.3d at 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 35} Appellant first argues that the trial court erred by refusing to allow Dr. Leach to testify as to the ultimate issue in this case contrary to Evid.R. 704. Evid.R. 704 provides:
"Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."
 {¶ 36} This Court has already stated that the ultimate issue to be decided in this case is whether or not appellee, as the natural father of the child, is suitable to parent the child. Inherent in that determination is whether an award of custody to appellee would be detrimental to the child.
 {¶ 37} Dr. Leach testified that he did not have the opportunity to interview appellee. Therefore, he could not offer any opinion regarding appellee's suitability to parent. Dr. Leach further informed the court that he did not have the benefit of performing an evaluation as to what would be in the child's best interest regarding custodial placement and that he could not, therefore, render an opinion in that regard. Although Dr. Leach testified that he could speak generally regarding some detriments associated with removing the child from his current placement with appellant, he did not have the basis from which to speak of the relative detriment versus the advantages to the child in regard to such a move.
 {¶ 38} Evid.R. 602 provides:
"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of testimony of the witness himself. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses."
 {¶ 39} Evid.R. 703 provides:
"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."
 {¶ 40} In this case, Dr. Leach was not present for the presentation of other evidence, so that he could not have based an opinion as to the ultimate issue on other evidence admitted at the hearing.[2] In addition, Dr. Leach testified that he had no personal knowledge from which he could formulate an opinion as to the ultimate issue in this case, i.e., whether or not appellee would be a suitable parent. Therefore, the trial court appropriately excluded any testimony by Dr. Leach in that regard.
 {¶ 41} Appellant next argues that the trial court erred by excluding Dr. Leach's testimony regarding his interviews with the child. Specifically, appellant argues that the trial court should have admitted Dr. Leach's testimony regarding what he observed during his interviews with the child, as well as what the child told him during the interviews. In addition, appellant argues that the trial court erred by refusing to admit Dr. Leach's expert report into evidence. This Court disagrees.
 {¶ 42} The trial court in fact allowed Dr. Leach to testify as to his observations of the child during the interviews. The trial court informed Dr. Leach:
"You may, as you have done, articulate your observations, behavior as polite and intellectual, I would not have a problem if you called him well adjusted, but for you to describe for me apart from observations, I am not going to allow you to do so."
 {¶ 43} Dr. Leach testified that he observed the child as one who used language well, who was polite and respectful, and who had no difficulty showing affection and warmth to appellant. Under the circumstances, this Court finds no merit to appellant's argument that the trial court erroneously excluded Dr. Leach's observations of the child.
 {¶ 44} This Court further finds that the trial court appropriately excluded statements by the child to Dr. Leach during interviews as hearsay not subject to an exception. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). While Evid.R. 703 permits an expert to testify as to his opinion based upon the facts or data perceived by him, the rule does not grant blanket admissibility to those underlying facts or data, if they are not otherwise admissible under the Rules of Evidence. Therefore, this Court cannot say that the trial court abused its discretion by excluding hearsay statements made by the child to Dr. Leach notwithstanding Dr. Leach's reliance on those statements in the formulation of his expert opinion.
 {¶ 45} Finally, appellant argues that the trial court erred by excluding Dr. Leach's expert report as an exhibit. Based on Dr. Leach's testimony that he was not able to interview or otherwise evaluate appellee and make any determinations regarding appellee's suitability as a parent, the trial court found that Dr. Leach's report could not provide any relevant evidence necessary for a determination of the ultimate issue in this case. In addition, the trial court found that the information in the report upon which Dr. Leach based his expert opinion was hearsay, and that appellee could not effectively cross examine Dr. Leach, as appellee was not privy to the conversation between the child and the witness. Because the court found that Dr. Leach's report consisted of hearsay and did not contain evidence relevant to a determination of the ultimate issue in the case, the trial court appropriately excluded Dr. Leach's export report. Appellant's fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR VI
"The trial court erred and abused its discretion in failing to issue a ruling on defendant/appellant's motion for child support refund which was heard before the trial court."
 {¶ 46} Appellant argues that the trial court abused its discretion by failing to issue a ruling on appellant's motion for child support refund, which motion was pending before the court and heard at trial.
 {¶ 47} "The fact that a court fails to expressly rule on a motion does not constitute an abuse of discretion." Fed. Home Loan Mtge. Corp. v.Owca (Nov. 17, 1999), 9th Dist. No. 2897-M. In general, if the trial court fails to mention or rule on a pending motion, the appellate court presumes that the motion was implicitly overruled. Id., citing Maust v.Palmer (1994), 94 Ohio App.3d 764, 769; Kott Ent., Inc. v. Brady, 6th Dist. No. L-03-1342, 2004-Ohio-7160, at ¶ 40.
 {¶ 48} In this case, the trial court fully anticipated the presentation of evidence on appellant's motion at trial. Appellant briefed the issue in his trial brief. Further, both appellant and appellee testified in regard to the child support issue at trial. Finally, appellant argued the matter in his post-trial brief. Appellant has failed to point to any evidence in the record that the trial court failed to consider his motion. Consequently, this Court cannot conclude that the trial court failed to consider appellant's motion. Rather, this Court finds that the trial court implicitly overruled appellant's motion for child support refund. See Owca. The implicit, rather than explicit, denial of appellant's motion, however, does not prevent this Court from further addressing whether the trial court erred in denying the motion. See Owca.
 {¶ 49} This Court reviews matters concerning child support under an abuse of discretion standard of review. Swank v. Swank (Feb. 19, 2003), 9th Dist. No. 21207. This Court, therefore, cannot reverse the denial of appellant's motion for child support refund absent an abuse of discretion by the trial court. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore, 5 Ohio St.3d at 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons, 66 Ohio St.3d at 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 50} This Court has previously held that once an obligor's child support obligations have ended, the obligor is entitled to a refund of monies which were deducted from his pay. Krepps v. Krepps (Jan. 10, 1990), 9th Dist. No. 14159.
 {¶ 51} In this case, appellant's obligation to pay child support for the child to appellee arose out of the parties' shared parenting plan. This Court subsequently found that the shared parenting plan as between appellant and appellee was void ab initio, because the child is not the minor child of a marriage between them. Lorence v. Goeller (July 19, 2000), 9th Dist. No. 98CA007193. This Court further found that the calculation of child support as between the parties was void ab initio, because it did not comport with the mandatory requirements of R.C.3113.215, which "must be followed literally and technically in all material respects." Id., citing Pauly v. Pauly (1997), 80 Ohio St.3d 386,390. Because the child support worksheet set forth in R.C. 3113.215(E), upon which child support calculations are premised, sets up its calculations in regard to "Father" and "Mother," the worksheet and concomitant calculations and orders are inapplicable to appellant and appellee, who are not the father and mother of the child. Id. Therefore, any child support order as between appellant and appellee for the benefit of the child is void ab initio. Consequently, appellant never had a child support obligation in regard to the child, and any monies paid to the Child Support Enforcement Agency under the void child support order were paid in error. Appellant's child support obligation never existed upon this Court's voiding of the shared parenting plan. As a result, appellant is entitled to a refund to all monies deducted from his pay under the void child support order. Therefore, the trial court abused its discretion when it denied appellant's motion for child support refund.
 {¶ 52} Appellant's sixth assignment of error is sustained. The matter is remanded to the trial court for determination of the amount of child support refund to which appellant is entitled.
 III. {¶ 53} Appellant's first, second, third, fourth, and fifth assignments of error are overruled. Consequently, the judgment of the Lorain County Court of Common Pleas, Juvenile Division, as it relates to the award of custody of the child to appellee is affirmed. Appellant's sixth assignment of error is sustained. Consequently, the matter is remanded to the Lorain County Court of Common Pleas, Juvenile Division, for determination of appellant's pending motion for child support refund.
Judgment affirmed, in part, reversed, in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Exceptions.
Slaby, P.J., Moore, J. Concur.
[1] In Lorence v. Goeller (July 19, 2000), 9th Dist. No. 98CA007193, this Court held that, because shared parenting plans pursuant to R.C.3109.04 are applicable only as to a child of the marriage, the shared parenting plan between appellant and appellee had no effect.
[2] Immediately prior to the commencement of trial, appellee's counsel moved for a separation of witnesses, which the court granted.