[Cite as *Bass-Fineberg Leasing, Inc. v. Modern Auto Sales, Inc.*, 2015-Ohio-46.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| BASS-FINEBERG LEASING, INC. | C.A. No. 13CA0098-M |
| Appellant/Cross-Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MODERN AUTO SALES, INC., et al. | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellees/Cross-Appellants | CASE No. 10CIV1693 |

DECISION AND JOURNAL ENTRY

Dated: January 12, 2015

WHITMORE, Judge.

{¶1} Appellant, Bass-Fineberg Leasing, Inc. ("Bass-Fineberg"), appeals from the judgment of the Medina County Court of Common Pleas. Cross-Appellant, BVIP Limo Services, Ltd. ("BVIP"), also appeals from judgments of the Medina County Court of Common Pleas in the same case. This Court affirms.

I

{¶2} Bass-Fineberg leased a 44-passenger tour bus to Modern Auto Sales Inc. ("Modern Auto") and Michael Cipriani, as co-lessees. The lease provided that Modern Auto and Cipriani would make monthly payments for 3 years at the conclusion of which they would have the option to purchase the bus for $1.00. The lease agreement prohibited Modern Auto and Cipriani from assigning their rights or obligations without Bass-Fineberg's written consent.

{¶3} Shortly after entering the lease, Cipriani contacted Anthony Allie at BVIP to repair the bus. Neither Modern Auto nor Cipriani paid for the repairs. Consequently, after

making the repairs, BVIP retained possession of the bus. About the same time, Modern Auto and Cipriani also defaulted on their payment obligations to Bass-Fineberg.

{¶4} Cipriani proposed a meeting between himself, Allie, and David Libman, a lease sales manager for Bass-Fineberg. Libman testified that when he got there, "Allie and [] Cipriani [were] arguing about who owed money for repairs done on Cipriani's vehicles and runs that he did for [] Allie." Thus, Libman assumed that there was some sort of business relationship between the two. According to Libman, at some point during that meeting Cipriani and Allie went into a separate room. Libman asserted that when they came back, Allie handed him $5,000 cash which Libman understood he was supposed to apply to the account. Libman denied ever seeing a written agreement or being told that Allie was paying the money to buy the bus. Libman provided Allie a receipt and testified that the $5,000 payment brought the account "very close to being current." Nonetheless, Libman admitted that he did grant Allie a power of attorney with respect to the bus so that Allie could get current license plates for the bus.

{¶5} Notwithstanding the foregoing, Allie testified that, at the meeting, he and Cipriani executed a document, which they considered a "Rental Lease Purchase" agreement regarding the purchase of the bus. We note that the agreement is quite rudimentary. It is a single-page document that is handwritten, contains several misspellings, and is somewhat difficult to understand. It appears that the agreement provided that Allie would pay $5,000 to Bass-Fineberg to "pay rec[eiv]ables up to date." Then, Cipriani would make monthly payments to Allie, which Allie would apply toward the purchase of the bus. Allie would make the final payment on the bus and receive title for it from Bass-Fineberg. The agreement also provided that either party could cancel it within 30 days and the $5,000 payment would be returned. Allie testified that "[Cipriani] couldn't afford to pay [him] the money [Cipriani] owed [Allie], so [Allie] was trying

to get possession of the vehicle [] to try and get [his] money back out of the vehicle for the work that [Allie] had done." Allie indicated that Cipriani presented the agreement to Libman but he refused to sign it. Allie stated that they also discussed the terms of the agreement with Libman.

{¶6} The next day, Allie left a voicemail for Libman requesting his money back. Libman did not return Allie's call, but called Cipriani who assured him that he would "get it fixed." Allie testified that he decided to cancel the agreement because he did not think Cipriani would honor his part and he knew Cipriani was uncollectible.

{¶7} BVIP continued to retain possession of the bus. A few months later, Bass-Fineberg filed a replevin action against Modern Auto, Cipriani, BVIP, and Allie. BVIP and Allie answered, filed a cross-claim against Modern Auto and Cipriani and a counterclaim against Bass-Fineberg. BVIP and Allie asserted that they were entitled to a recover their $5,000 payment, $1,000 for repairs, and $30 per day for storing the bus.

{¶8} Bass-Fineberg filed a motion for possession, which was set for a hearing before the trial judge. The trial court initially held that Bass-Fineberg was entitled to possession of the bus because Modern Auto and Cipriani had failed to make payments under the lease. But the trial court also found that Bass-Fineberg had failed to return the $5,000 payment to Allie and had failed to pay for repairs to the bus. Consequently, the court determined that it would not issue an order of possession until Bass-Fineberg paid Allie $6,000 for these items.

{¶9} Bass-Fineberg filed a motion for reconsideration arguing the hearing on its motion was statutorily limited to whether it had established probable cause that it was entitled to possession of the bus. Bass-Fineberg contended that the court exceeded the scope of the hearing and effectively granted the counterclaim without permitting any discovery. After a second

hearing, the court vacated its earlier entry and determined that Bass-Fineberg was entitled to temporary possession of the bus upon the posting of a bond.

{¶10} The remaining claims were set for a non-jury trial and referred to the court's magistrate. Thereafter, BVIP and Allie filed a motion for default judgment against Cipriani and Modern Auto. On December 15, 2011, the court granted BVIP and Allie default judgment against Modern Auto and Cipriani, jointly and severally, in the amount of $6,000.

{¶11} In April 2012, a hearing was held by the magistrate. At the start of the hearing, she noted that the hearing would address the issues of: 1) permanent possession of the bus; 2) the $5,000 payment; and 3) the claim for repairs. BVIP indicated that it was also seeking storage fees. Allie and Libman testified at the hearing. The magistrate issued a decision recommending judgment in favor of Allie and BVIP in the amount of $10,331.50. This amount included the return of the $5,000 payment, $1,341.50 for repairs, and $3,990 for storage.

{¶12} Bass-Fineberg filed objections to the magistrate's decision. The trial court granted the objections in part, overruled them in part, and modified the magistrate's decision accordingly. The trial court held that Bass-Fineberg owed BVIP and Allie the $5,000 payment and the cost of the repairs, but not the storage fees. Consequently, the trial court granted BVIP and Allie judgment against Bass-Fineberg in the amount of $6,341.50. Subsequently, the trial court also entered an order directing that Bass-Fineberg have permanent possession of the bus.[1]

---

[1] The magistrate had not included a recommendation regarding possession of the bus in her decision, nor did the trial judge address it in his July 22, 2013 judgment entry. After this Court dismissed Bass-Fineberg's attempted appeal from the July 22, 2013 entry for lack of a final, appealable order, the trial court awarded permanent possession of the bus to Bass-Fineberg in a November 12, 2013 judgment entry.

{¶13} Bass-Fineberg now appeals raising five assignments of error for our review. BVIP[2] cross-appeals raising two assignments of error for our review. To facilitate the analysis, we have rearranged some assignments of error.

II

Bass-Fineberg's Assignment of Error Number One

THE TRIAL COURT ERRED BY FINDING THAT ALLIE AND CIPRIANI ENTERED INTO A VALID, ENFORCEABLE CONTRACT[.]

{¶14} In its first assignment of error, Bass-Fineberg argues that the purported contract between Cipriani and Allie was void because Cipriani could not assign his rights or obligations under the lease without the written consent of Bass-Fineberg. Bass-Fineberg further argues that the trial court erred in finding that it was a third-party beneficiary to a void contract. BVIP responds that if the contract was void, then the parties should be returned to their pre-contract status, including refunding its $5,000 payment. We agree with Bass-Fineberg that there was not a valid contract between Allie and Cipriani, but we agree with BVIP as to the effect of that invalidity, namely that it was entitled to have its $5,000 returned.

{¶15} "Ohio enforces anti-assignment clauses where there is clear contractual language prohibiting an assignment." *Harding v. Viking Internatl. Resources Co., Inc.*, 4th Dist. Washington No. 13CA13, 2013-Ohio-5236, ¶ 14. Violations of a non-assignment provision in a contract render the resulting agreement null and void. *See Cleveland Clinic Found. v. Internatl. Portfolio Inc.*, 8th Dist. Cuyahoga Nos. 99898 & 99988, 2014-Ohio-700, ¶ 24-25.

---

[2] While BVIP lists itself and Allie as cross-appellants on the cover page of its brief, we note that only BVIP was listed on the notice of cross-appeal filed in the trial court on December 12, 2013. Allie previously filed a notice of appeal from the order granting temporary possession of the bus to Bass-Fineberg, but we dismissed that attempted appeal for lack of a final, appealable order.

**{¶16}** In the instant matter, the trial court found that Bass-Fineberg was an intended third-party beneficiary to the agreement between Allie and Cipriani. In ordering the $5,000 payment returned to BVIP, the trial court reasoned that, as a third-party beneficiary, Bass-Fineberg had no greater rights than the parties to the contract and was bound by the cancelation provision. Bass-Fineberg argues that it cannot be a third-party beneficiary to the contract between Cipriani and Allie because that contract was void as it violated the anti-assignment provision in its lease with Modern Auto and Cipriani. We agree.

**{¶17}** The lease between Bass-Fineberg and Modern Auto and Cipriani contained the following provision:

> [MODERN AUTO AND CIPRIANI] ACKNOWLEDGE THAT [MODERN AUTO AND CIPRIANI] MAY NOT ASSIGN OR IN ANY WAY TRANSFER OR DISPOSE OF ALL OR ANY PART OF [MODERN AUTO AND CIPRIANI'S] RIGHTS OR OBLIGATIONS UNDER THIS LEASE, FOR EXAMPLE BY SUBLEASING, WITHOUT [BASS-FINEBERG'S] PRIOR WRITTEN CONSENT.

This clear contractual language prohibited Modern Auto and Cipriani from transferring their rights or obligations under the lease agreement unless Bass-Fineberg consented in writing.

**{¶18}** The purported agreement between Cipriani and Allie attempted to transfer Cipriani's right to purchase the bus to Allie and some of Cipriani's payment obligations to Allie. Libman, Bass-Fineberg's lease sales manager, did not sign the agreement between Allie and Cipriani. Nor did the parties introduce evidence of anyone else from Bass-Fineberg providing written consent to the attempted assignment.[3] At the magistrate's hearing, Libman indicated

---

[3] We note that the lease account history, entered into evidence by Bass-Fineberg, lists BVIP as the lessee. But the parties do not argue that this demonstrates consent to the attempted assignment.

that, pursuant to the terms of the lease, the purported contract between Allie and Cipriani was "null and void" because Cipriani did not have the ability to unilaterally assign it.

{¶19} As the lease agreement prohibited an assignment without Bass-Fineberg's consent, the agreement between Cipriani and Allie was void. If a contract is void, then an obligation under it never existed. *See Lorence v. Goeller*, 9th Dist. Lorain No. 04CA008556, 2005-Ohio-2678, ¶ 51. In such circumstances, the one who made a payment is entitled to a refund. *See id.* (finding party entitled to refund of money paid to Child Support Enforcement Agency under child support order that had been based, in part, on a void shared parenting plan).

{¶20} "[T]o demonstrate reversible error on appeal, Appellants must not only demonstrate error by the trial court but they must also demonstrate that they were materially prejudiced by that error." *Collier v. Dorcik*, 9th Dist. Medina No. 03CA0103-M, 2004-Ohio-4062, ¶ 7. While Bass-Fineberg correctly argues the purported contract between Cipriani and Allie is void, it incorrectly concludes that entitles it to retain the $5,000 payment. Just as Bass-Fineberg could not be a third-party beneficiary to a void contract, BVIP could not have an obligation to make a payment under that same void contract. Although it erred in its reasoning, the result reached by the trial court, namely ordering Bass-Fineberg to return the $5,000 to BVIP, was correct.

{¶21} On that basis, Bass-Fineberg's first assignment of error is overruled.

<u>Bass-Fineberg's Assignment of Error Number Two</u>

ASSUMING ARGUENDO THAT BASS-FINEBERG WAS A THIRD PARTY BENEFICIARY, THE TRIAL COURT ERRED IN FINDING THAT IT WAS REQUIRED TO REPAY THE $5,000[.]

{¶22} In its second assignment of error, Bass-Fineberg argues, in the alternative, that if it was a third-party beneficiary, it was entitled to retain the $5,000 payment because it was a

creditor beneficiary. In our resolution of Bass-Fineberg's first assignment of error, we agreed with Bass-Fineberg that it could not be a third-party beneficiary to a void contract. Therefore, it is not necessary to determine what type of beneficiary Bass-Fineberg might have been if the contract had not been void. Consequently, this assignment of error is moot. *See* App.R. 12(A)(1)(c).

Bass-Fineberg's Assignment of Error Number Five

THE TRIAL COURT ERRED IN FINDING THAT BASS-FINEBERG WAS LIABLE TO ALLIE FOR THE REPAIRS REQUESTED BY CIPRIANI[.]

**{¶23}** In its fifth assignment of error, Bass-Fineberg argues that the trial court erred because the plain terms of its lease provide that Cipriani was responsible for repairs to the bus. In addition, Bass-Fineberg argues that the trial court's decision is against the manifest weight of the evidence. We find that Bass-Fineberg has forfeited these arguments.

**{¶24}** Where a party fails to raise an issue in its objections to a magistrate's decision, that issue is forfeited on appeal. *Walters v. Walters*, 9th Dist. Medina No. 12CA0017-M, 2013-Ohio-636, ¶ 15. "An objection to a magistrate's decision shall be specific and state with particularity *all* grounds for objection." (Emphasis added.) Civ.R. 53(D)(3)(b)(ii). "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Civ.R. 53(D)(3)(b)(iv). "While a [party] who forfeits such an argument still may argue plain error on appeal, this [C]ourt will not sua sponte undertake a plain-error analysis if the [party] fails to do so." *McMaster v. Akron Health Dept.*, 189 Ohio App.3d 222, 2010-Ohio-3851, ¶ 20 (9th Dist.). In the instant matter, Bass-Fineberg has not argued plain error.

{¶25} On appeal, Bass-Fineberg argues that "per the lease agreement, [Cipriani] was required to pay for all maintenance and repairs." In its objections to the magistrate's decision, Bass-Fineberg did not mention any provision in the lease requiring that Cipriani pay for maintenance and repairs. Rather, Bass-Fineberg argued below that it should not be liable for the repairs because they were requested by Cipriani and were intended to benefit Cipriani. Having failed to bring the maintenance provision of the lease to the attention of the trial court, Bass-Fineberg cannot argue on appeal that the trial court "erroneously interpreted" it.

{¶26} On appeal, Bass-Fineberg further argues that there was "ample evidence on the record that the repairs were not done." In addition, Bass-Fineberg alleges the "only evidence for [the] amounts [for the repairs] were from the self-serving testimony of [] Allie." In its objections to the magistrate's decision, Bass-Fineberg did not argue that the repairs were not made or the charges were unreasonable. Rather, Bass-Fineberg argued below that "[t]he repairs were made at a time when fixing the vehicle was never intended to be for [Bass-Fineberg's] benefit." Consequently, Bass-Fineberg has also forfeited its arguments that the repairs were not done and the charges were unreasonable.

{¶27} Bass-Fineberg's fifth assignment of error is overruled.

### Bass-Fineberg's Assignment of Error Number Three

THE TRIAL COURT ERRED BY FAILING TO APPLY THE VOLUNTARY PAYMENT DOCTRINE[.]

{¶28} In its third assignment of error, Bass-Fineberg argues that the trial court failed to apply the voluntary payment doctrine. In its brief, Bass-Fineberg cites *Nationwide Life Ins. Co. v. Myers*, 67 Ohio App.2d 98, 103 (9th Dist.1980), for the proposition that "[i]n the absence of fraud, duress, compulsion or *mistake of fact*, money, voluntarily paid by one person to another on

a claim of right to such payment, cannot be recovered merely because the person who made the payment *mistook the law* as to his liability to pay." (Emphasis added.).

{¶29} An appellant may not assert a new theory for the first time on appeal. *Cincinnati Equitable Ins. Co. v. Sorrell*, 9th Dist. Lorain No. 05CA008703, 2006-Ohio-1906, ¶ 26. In its objections to the magistrate's decision, Bass-Fineberg did argue that the voluntary payment doctrine applied. But, the argument it advances on appeal is decidedly different than the argument it made below. In its objections to the magistrate's decision, Bass-Fineberg focused on the absence of a mistake of fact. By contrast, on appeal, Bass-Fineberg argues that there was a mistake of law.

{¶30} In its objections to the magistrate's decision, Bass-Fineberg argued the $5,000 payment was voluntarily made with full knowledge of the facts including the terms of Cipriani's lease agreement, that the account was in default, that Libman would repossess the bus if not paid, and that Libman was not a party to the agreement between Allie and Cipriani. On appeal, Bass-Fineberg argues that Allie mistook the law regarding its alleged creditor-beneficiary status. Bass-Fineberg did not argue that it was a creditor beneficiary to the trial court. Nor did Bass-Fineberg allege to the trial court, as it does on appeal, that this claimed status rendered any payment irrevocable. Thus, the trial court did not have the opportunity to consider this issue in the first instance, and we decline to consider it on appeal. *See Cincinnati Equitable Ins. Co.* at ¶ 27.

{¶31} Bass-Fineberg's third assignment of error is overruled.

<u>Bass-Fineberg's Assignment of Error Number Four</u>

THE TRIAL COURT ERRED BY ALLOWING DOUBLE RECOVERY[.]

{¶32} In its fourth assignment of error, Bass-Fineberg argues that "[b]y entering judgment against Bass-Fineberg after already entering judgment against Cipriani, the trial court erred by granting an impermissible double recovery to Allie."[4]

{¶33} The trial court granted default judgment in favor of Allie and BVIP against Cipriani and Modern Auto on December 15, 2011. On April 16, 2012, a hearing was held before the magistrate. At the beginning of the hearing, the magistrate addressed counsel as she enumerated the issues before her. After noting that Bass-Fineberg was seeking permanent possession of the bus, the magistrate stated that BVIP and Allie had "a counterclaim * * * for a payment of $5,000[ a]nd * * * for repairs that were allegedly done to the bus." Bass-Fineberg did not object or note to the court that any judgment might result in a double recovery. The hearing then proceeded with the parties presenting evidence and arguments regarding the $5,000 payment and repairs to the bus. Bass-Fineberg filed objections to the magistrate's decision, but again, did not raise any double recovery issue.

{¶34} When issues are apparent at the time a trial court holds a hearing, a party's failure to raise them prior to judgment constitutes a forfeiture of them on appeal. *State v. Zepeda-Ramires*, 9th Dist. Lorain No. 12CA010275, 2013-Ohio-1224, ¶ 11. A party cannot contest an issue on appeal "if that issue was in existence prior to or at the time of trial and the party did not raise it at the appropriate time in the court below." *Russell v. City of Akron Hous. Appeals Bd.*, 9th Dist. Summit No. 17271, 1996 WL 1769, *1 (Jan. 3, 1996).

{¶35} Bass-Fineberg acquiesced in going forward on the issues of whether it owed the $5,000 and the costs of repairs to Allie and BVIP. Consequently, Bass-Fineberg has forfeited

---

[4] Bass-Fineberg has not argued that Allie and BVIP have actually recovered any amount on their judgment against Cipriani and Modern Auto. We note that even if multiple parties are liable, Allie and BVIP may only recover their damages once.

this alleged error. *See State v. Crutchfield*, 9th Dist. Lorain Nos. 10CA009931, 10CA009932, & 10CA009933, 2011-Ohio-6681, ¶ 22 (finding party who acquiesced in the admission of evidence forfeited alleged error).

{¶36} Bass-Fineberg's fourth assignment of error is overruled.

<u>BVIP's Assignment of Error Number Two</u>

THE TRIAL COURT ERRED WHEN JUDGE KIMBLER PARTIALLY OVERRULED THE MAGISTRATE BY NOT GRANTING JUDGMENT FOR STORAGE OF THE VEHICLE AS THE EVIDENCE CLEARLY STATED THAT A FAIR VALUE FOR STORAGE FEES WAS $30 - $35 / DAY.

{¶37} In its second assignment of error, BVIP argues that it should have been awarded $30 to $35 for each day that the bus remained on its property. The magistrate recommended $3,990 for storage fees in her decision, but the trial court did not award BVIP any storage fees.

{¶38} A trial court has discretion to "adopt or reject a magistrate's decision in whole or in part, with or without modification." Civ.R. 53(D)(4)(b). "[T]he decision to adopt, reject, or modify a magistrate's decision lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion." (Alteration sic.) *Erwin v. Erwin*, 9th Dist. Wayne No. 13CA0009, 2014-Ohio-874, ¶ 11, quoting *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 5. But, "we consider the trial court's action with reference to the nature of the underlying matter." *Erwin* at ¶ 11, quoting *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18.

{¶39} Although not entirely clear, BVIP appears to argue that the trial court's decision was against the manifest weight of the evidence. When analyzing a manifest-weight-of-the-evidence challenge, we "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of

fact clearly lost its way and created such a manifest miscarriage of justice that the [decision] must be reversed." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶40} In its complaint, BVIP requested storage fees of $30 per day. At the magistrate's hearing, BVIP did not present any evidence or testimony to support this amount. Allie testified that he begins to charge for storage if a vehicle remains there for more than 30 days. But he did not testify as to the daily amount charged for storage, nor did he present an invoice or other documentation regarding the storage fees.

{¶41} Bass-Fineberg introduced into evidence a bill that it had received from another company for towing and storing the bus after it was awarded temporary possession by the trial court. That bill details that the storage charge was $35 per day for 10 days. Libman admitted that the $35 per day charge was within a normal range of $30 to $35 per day for storing a vehicle.

{¶42} The trial court noted, "[w]hile there was evidence of the fee charged by the Cleveland facility[,] there was no evidence as to how that facility compared to the facility that was used by [BVIP] to house the bus." BVIP has not pointed to any testimony or other evidence in the record establishing that the facilities were similar or independently establishing the reasonableness of its charges. Having reviewed the record, we cannot say that the trial court erred in determining that BVIP failed to establish its claimed amount for storage fees.

{¶43} BVIP's second assignment of error is overruled.

<u>BVIP's Assignment of Error Number One</u>

THE TRIAL COURT ERRED AS A MATTER OF LAW BY ORDERING THE VEHICLE, WHICH WAS SUBJECT TO A REPLEVIN ACTION, TO BE RETURNED TO THE OWNER WHEN THE DEFENDANT-APPELLANTS HAD A PRE-EXISTING GARAGEMAN'S LIEN AND THE EFFECT OF THE ORDER WAS TO STRIP THE DEFENDANT-APPELLANTS OF THEIR

RIGHT TO RETAIN THE VEHICLE UNTIL THEY WERE PAID FOR THEIR SERVICES AND STORAGE FEES.[]

{¶44} According to BVIP, the trial court erred in its February 17, 2011 judgment entry granting temporary possession of the bus to Bass-Fineberg because it "destroyed BVIP's common law right to a garageman's lien once the vehicle was removed from BVIP's possession." BVIP argues that it could not be required to release the bus to anyone until it received payment for the repairs.[5]

{¶45} The trial court held two hearings regarding temporary possession of the bus – one on January 14, 2011, and another one on February 17, 2011. Following the initial hearing, the trial court determined that Bass-Fineberg was entitled to possession of the bus, but required it to pay $6,000 to Allie before it would receive possession of the bus. Bass-Fineberg filed a motion for reconsideration, which was granted. Following the second hearing, the trial court held that Bass-Fineberg was entitled to temporary possession of the bus upon posting a bond pursuant to R.C. 2737.10.

{¶46} R.C. 2737.07 governs the hearing on a motion for an order of possession of personal property. The initial hearing is limited to a consideration of whether there is probable cause to support the motion. R.C. 2737.07(B). The court shall issue the order of possession "on the basis of the affidavit and * * * the evidence presented at the hearing." R.C. 2737.07(B).

{¶47} BVIP has not supplied this Court with transcripts from the January 14, 2011 and February 17, 2011 hearings. Consequently, we are unable to review the trial court's probable cause determination. When an appellant does not provide transcripts necessary for our review of

---

[5] BVIP also argues that it was entitled to retain possession until it was paid storage fees. Bass-Fineberg responds, in part, that there is no right to retain a vehicle for storage fees. Because the trial court did not award storage fees and we upheld that determination under BVIP's assignment of error number two, we do not reach this issue.

an assignment of error, we must presume regularity in the trial court's proceedings. *State v. Campbell*, 9th Dist. Medina No. 13CA0013-M, 2014-Ohio-1329, ¶ 12.

**{¶48}** To the extent that BVIP argues an error occurred "as a matter of law," it has not provided this Court with authorities to support that argument. *See* App.R. 16(A)(7) (an appellant's brief shall include citations to authority supporting its argument). BVIP cites the following cases holding that a garage owner may retain possession of a vehicle as security for the value of repairs: *Robinson v. Barry Equip. Co.*, 6th Dist. Wood No. WD-82-10, 1982 WL 6512 (July 23, 1982); *Shearer v. Bill Garlic Motors, Inc.*, 59 Ohio App.2d 320, 322 (6th Dist.1977); *State v. Vitale*, 96 Ohio App.3d 695, 702 (8th Dist.1994). *Robinson*, *Shearer*, and *Vitale* each addressed the issue of whether a garage could retain possession of a vehicle after an owner requested repairs. But those cases do not address the issue before us, where the owner is seeking to recover a vehicle when the lessee of that vehicle requested, but failed to pay for, repairs.

**{¶49}** While a garage owner generally has a lien for repairs performed, the right to retain possession is not absolute. *See Centran Bank of Akron v. Beckers Serv., Inc.*, 9th Dist. Summit No. 7966, 1976 WL 188741, *1 (April 21, 1976) (upholding trial court's decision in replevin action that chattel mortgage lien was superior to repairman's lien on vehicle); *see also In re Conley*, 482 B.R. 191, 215 (Bankr.S.D.Ohio 2012), fn. 17 (valid lien on title trumps a mechanic's possessory lien.). When a plaintiff in a replevin action recovers possession of property, it does not deprive an artisan of his claim for work or labor expended. *Cleveland Auto Top & Trimming Co. v. Am. Fin. Co.*, 124 Ohio St. 169, 171 (1931). "It is only a voluntary surrender of possession which deprives the lien claimant of his right to enforce his lien by proper proceedings." *Id.* at 172; *accord Mack Fin. Corp. v. Kenworth of Cincinnati, Inc.*, 1st Dist.

Hamilton No. C-790740, 1981 WL 9818, *4 (June 3, 1981), fn. 7 (an artisan's lien "is not extinguished by the removal of the vehicle from the artisan's possession without his consent.")

**{¶50}** As the right to retain possession is not absolute and BVIP has not supplied this Court with the hearing transcripts necessary to review the trial court's probable cause determination, BVIP has not demonstrated that the trial court erred in its determination.

**{¶51}** BVIP's first assignment of error is overruled.

### III

**{¶52}** Bass-Fineberg's first, third, fourth and fifth assignments of error are overruled. Bass-Fineberg's second assignment of error is moot. BVIP's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

MOORE, J.
CONCURS.

BELFANCE, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶53} I concur in the majority's judgment. I write separately to emphasize that the handwritten agreement is rudimentary and difficult to decipher and, thus, can be subject to more than one interpretation. In addition, there was conflicting evidence as to the substance of the interaction between Libman and Allie at the time Libman received the $5,000 and evidence that, after the tender of the funds, Allie continued to have discussions with Libman concerning the disposition of the bus. Thus, when examining the record, it does not necessarily require the conclusion that the handwritten document was an attempt to assume duties under the lease; instead, it could be viewed as a proposed purchase agreement detailing how Allie would buy the bus. Nonetheless, irrespective of how the agreement is characterized, I agree that there is no valid contract between Allie and Bass-Fineberg. Even if it is more accurate to view the handwritten document as an independent purchase agreement (that would not violate the anti-assignment clause in the lease), Mr. Libman and Bass-Fineberg never agreed to sell the bus to Allie. Accordingly, if viewed in that light, Allie tendered $5,000 to an unwilling seller that refused to consummate the proposed sales transaction. Moreover, given the absence of any binding agreement and the limited argument presented by Bass-Fineberg, I agree that Bass-Fineberg has not demonstrated that it was entitled to retain the $5,000 tendered by Allie. I concur in the majority's judgment.

APPEARANCES:

MARK BRNCIK and JAMES OH, Attorneys at Law, for Appellant/Cross-Appellee.

LAWRENCE J. COURTNEY, Attorney at Law, for Appellee/Cross-Appellant.